## LEE v. HUFF.

### Opinion delivered January 11, 1896.

SCHOOL EXAMINER—REVOCATION OF TEACHER'S LICENSE—LIABILITY.—A school examiner will not be liable for damages for an error of judgment in revoking the license of a school teacher for an inadequate cause if he acted in good faith and without malice.

SAME—REVOKING LICENSE WITHOUT NOTICE.—A school examiner, authorized by statute to cite any teacher to re-examination, and to revoke his license for certain causes mentioned, will be personally liable for revoking the license of a teacher without giving him any notice.

NOTICE—WAIVER.—A request by a school teacher that an order of the school examiner revoking his license, made without notice to him, shall be set aside is not a waiver of notice, and does not validate the order, so as to relieve the examiner from personal liability, where the request is refused.

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

### STATEMENT BY THE COURT.

The appellant, W. F. Lee, being the county examiner of Hempstead county, held a teachers' institute at Washington, in that county. The appellee, J. B. Huff, a teacher in one of the public schools of the county, was notified that such institute would be held, but failed to attend the same. For this reason the appellant revoked the license which had been granted to Huff to teach in the public schools of the county. Afterwards Huff brought this action against Lee, alleging that his license had been revoked by the defendant "wrongfully, maliciously and without right;" that, by reason thereof, he was unable to comply with his contract which he had made to teach a school in said county; and he asked judgment for damages. Defendant, in his answer, denied that he had revoked the license wrongfully or

maliciously, but alleged that, after having been duly notified, the plaintiff had unlawfully, negligently and wilfully refused and failed to attend a teachers' institute, and that for this reason he revoked his license, believing that it was his duty so to do.

On the trial there was little dispute about the facts. It was shown that, after being notified, Huff had failed to attend a teachers' institute, and that for this reason his license to teach was revoked. The defendant testified that he had no malice, but that his action was dictated solely by what he supposed the law and his duty required that he should do. The court, among other instructions, told the jury that "there were only two causes for which the defendant, as county examiner, would have the right to revoke the license of the plaintiff, which were immorality and incompetency." The court refused to instruct for the defendant that if the license of plaintiff had been revoked on account of his failure after due notice to attend the teachers' institute, the jury should find for the defendant, if they believed "from the evidence that, in revoking the license of plaintiff as a public school teacher, he (the defendant) acted in good faith, and in the honest discharge of his duty, as he understood and construed it under the law."

There was a verdict and judgment against defendant for the sum of one hundred dollars.

*Dan W. Jones & McCain* and *R. B. Williams*, for appellant.

1. No civil liability attaches to an officer, acting within his jurisdiction, on account of the manner in which he discharges the duties of his office, unless it be shown that he acted maliciously or corruptly. Sand. & H. Dig. sec. 7000 to 7026; Bish. Non-Cont. Law, sec. 788; 20 Am. Rep. 431; Cooley, Torts, pp. 411, 412, and notes; 19 Am. & Eng. Enc. Law, pp. 486–489, and

notes ; Hilliard on Torts, 186 ; 3 How. 87, 98 ; 44 Mo. 491 ; 6 W. Va. 486 ; Duvall (Ky.), 66 ; 18 B. Mon. 711 ; 27 Am. Rep. 343 ; 95 Ill. 263 ; 35 Am. Rep. 163 ; 21 Am. & Eng. Enc. Law, 760-1-2 and notes ; 39 Oh. St. 346 ; 51 Ind. 206. But, if the powers of county examiners are not even *quasi* judicial, the same conclusion is reached.    104 Ind. 548.

2.    Disobedience of constituted authority is incompetency of the most flagrant type, and is an adequate cause of removal under our laws.    Sand. & H. Dig. secs. 7073, etc.; 53 Ark. 473.

3.    The court's charge was inconsistent and erroneous.

*D. B. Sain*, for appellee.

1.    The statute provides no penalty for failure to attend a county institute.    Sand. & H. Dig. sec. 7073. The county examiner has no power to revoke a license for such failure to attend.

2.    But if he had, non-attendance is not an "adequate" cause for removal, under sec. 7013.

3.    A county examiner is liable for revoking a teacher's license in any other manner and for any other cause than that prescribed by statute.    6 Neb. 539 ; 81 Ill. 597 ; 104 Ind. 548 ; 21 Am. & Eng. Enc. Law, p. 820, and note 2.    Even if he was a *quasi* judicial officer, if he acted from prejudice, or ill-will, or negligently, he is liable.    Bishop, Non-Cont. Law, secs. 3, 115, 116, 786, 789, 790.    He is neither a judicial nor *quasi* judicial officer, but he is an executive and administrative officer ; and if he exceeds his jurisdiction, he is liable for damages, whether there be malice or not.    4 N. E. 197 ; 2 Addison on Torts, p. 682 ; Bish. Non-Cont. Law, secs. 791 to 798 ; 19 A. & E. Enc, Law, pp. 492-3, and note.    A mistake as to duty, *but with honest intentions*, will not excuse the offender.    11 Wall. (U. S.), 136 ; 67 N. Y. 379.

4. A county examiner cannot revoke a license for any other cause than that prescribed by statute. 46 N. W. 1053; 21 A. & E. Enc. Law, p. 820: 6 Neb. 539; 81 Ill. 597. Even if he had the right to revoke, he should have reinstated the teacher after hearing his excuse. Cooley, Torts, p. 411.

RIDDICK, J., (after stating the facts.) Under our statute a county examiner has power to revoke the license of a teacher for immorality, incompetency, and for "other adequate causes." That portion of the statute defining the powers of such examiner, material for us to consider, is as follows: "He may cite to re-examination any person holding a license and under contract to teach any free school in his county; and, on being satisfied, by re-examination or by other means, that such person does not sustain a good moral character, or that he has not sufficient learning and ability to render him a competent teacher, he may, for these and other adequate causes, revoke the license of such person." *Liability of examiner for revoking teacher's license.*

When, under this statute, a teacher has been cited to appear and answer charges preferred against him, and, when, after a fair investigation, the examiner honestly concludes that the teacher has been guilty of such conduct as, under the statute, justifies a revocation of his license, we agree with counsel for appellant that he is not liable for damages, whether his decision be correct or not. He must follow the statute from which he receives his authority, but whether the evidence is sufficient to make out a proper case under the statute, is for him to determine. The law reposes this discretion in him, and will protect him when he acts honestly and in the faithful attempt to discharge his duties. To render him liable, it must be shown, not only that he acted erroneously, but also maliciously. Were the law otherwise, it would be hazardous to undertake to discharge

the duties of such an office, for an erroneous decision, however honestly made, would expose the officer to an action for damages.

Judge Appleton, of the Supreme Court of Maine, discussing this question in a case where the members of a school committee were sued for wrongfully expelling a student from a public school, said : "The general principle is established by an almost uniform course of decision that a public officer, when acting in good faith, is never to be held liable for an erroneous judgment in a matter submitted to his determination. All he undertakes to do is to discharge his duty to the best of his ability and with integrity. That he may never err in his judgment, or that he may never decide differently from what some other person may think would be just, is no part of his official undertaking." *Donahoe* v. *Richards*, 38 Me. 392. See also the following authorities : *Chamberlain* v. *Clayton*, 56 Iowa, 331 ; S. C. 41 Am. Rep. 101 ; *Burton* v. *Fulton*, 49 Pa. St. 154 ; *Gregory* v. *Small*, 39 Ohio St. 346 ; *Elmore* v. *Overton*, 104 Ind. 552 ; *Fausler* v. *Parsons*, 20 Am. Rep. 431 ; *Pike* v. *Megoun*, 44 Mo. 491 ; *Kendall* v. *Stokes*, 3 How. (U. S.) 98 ; Cooley on Torts, (2 ed.) 479–483 ; Mechem, Public Officers, secs. 638 and 639 ; 19 Am. & Eng. Enc. Law. 486–489 ; Bishop, Non-Contract Law, sec. 785.

Liability for revoking teacher's license without giving notice.
But the officer must act within his jurisdiction. Before he can claim the protection of the law he must do that which the law directs that he shall do before exercising his discretion.

A fair construction of the statute under consideration compels the conclusion that the examiner, before revoking the license of a teacher, must cite or summon him for examination upon the charges preferred against him. This citation is for the purpose of notifying the teacher of the charges made against him, in order that he may have an opportunity to disprove them, or to

render any reasonable excuse in justification of his con-
duct. This was not done in this case. The license was
revoked without notice to the teacher, and before he was
given an opportunity to defend or excuse his conduct.
The giving of this notice was not a matter left to the
discretion of the examiner; for, until it was given, he
had no power to pass upon the conduct of the teacher.
As he undertook to do this,—to pass judgment and re-
voke the license without notice,—he acted in violation of
the statute, and without authority, and he is liable for
the consequences of his acts. *Fausler* v. *Parsons*, 6 W.
Va. 486, S. C. 20 Am. Rep. 431; 2 Cooley, Torts, 486.

Some days after the order revoking the license had
been made, appellee came forward, and requested the
appellant to set the order aside, which appellant refused
to do. It is now said that this action of appellee was a
waiver of notice, but a majority of the court hold that
this is not so, for two reasons: First, all reference to this
application was, upon motion of the appellant himself,
stricken from the complaint; second, the application to
set aside could not make valid a previous void order.
Had the order revoking the license been set aside at
request of appellee, and the matter heard anew, a subse-
quent decision or order would not have been void for
want of notice; but this was not done. Appellant
refused to vacate or modify his order revoking the
license in any respect, and his liability for damages
must be tested by his authority to make that order.
The invalidity of that order is not in anyway affected
or cured by the ineffectual attempt to have it set aside.
Works, Courts and their Jurisdiction, p. 105; *Mills* v.
*State*, 10 Ind. 114; *Briggs* v. *Sneghan*, 45 Ind. 14.

Our conclusion is that the judgment of the circuit
court must be affirmed, without regard to whether the
court erred in its instructions or not; and it is so ordered.

*When want of notice not waived.*

BATTLE, J., (dissenting.) I think the judgment of the court in this case is correct, but the reasons upon which it is based are insufficient.

Appellant, the county examiner of Hempstead county, revoked appellee's license to teach in the public schools, because he failed to attend a meeting of the teachers' institute after being duly notified, or to render an excuse for not having done so. After this, he appeared before appellant, and rendered an excuse for such failure. Appellant, in his capacity of county examiner, heard it, but adjudged it insufficient, and refused to reinstate him. There was no controversy as to the facts. All of them were before the examiner, and were considered by him. Under the circumstances, a citation to show cause why appellee's license should not be revoked could have served no useful purpose. If there ever had been any necessity for it, it had been supplied by appellee's appearance before the examiner, and the hearing of the excuse and the facts. A formal citation and hearing could have accomplished nothing more, and would have been an idle ceremony.

A county examiner, in my opinion, has no authority to revoke the license of a teacher in the public schools, because of his failure to attend a teachers' institute. The statutes regulating public schools, in imposing duties upon officers and teachers, in many cases affix penalties to the failure to discharge some of these duties, as in sections 7016, 7023, 7024, 7038, 7039, 7058, 7070, 7076, 7082, and 7110 of Sandels & Hill's Digest. Section 7016 makes it the duty of the teacher to instruct "in the method of designating and reading the survey of the lands of this state by ranges, townships and sections and parts of sections as surveyed, platted and designated by the government of the United States." A wilful neglect or failure to discharge this duty is made a sufficient cause for the revocation of his license.

For a failure to make out and return the daily register which he is required to keep, he forfeits his last month's pay. It is made his duty to become a member and attend the regular sessions of the teachers' institute, but no penalty is annexed to the failure to do so by the statutes imposing the same. Why, I know not. The legislature may have thought that the statutes which provide that where the performance of any act is required by a statute, and no penalty for the violation of such statute is imposed, the neglect of such required act shall be deemed a misdemeanor, punishable by fine or imprisonment, or both, were sufficient for that purpose, and for that reason annexed no penalty. (Sand. & H. Dig. secs. 2293, 2294.) Whatever the reason for the omission may be, the county examiner cannot supply it.

The act which vested county examiners with authority to revoke a teacher's license for any cause except as before stated, and which constitutes sections 7010–7014 of Sandels & Hill's Digest, reads as follows: "He shall, at the time and place appointed for holding public examinations, examine in Orthography, Reading, Penmanship, Mental and Written Arithmetic, English Grammar, Modern Geography, History of the United States, and in the Theory and Practice of Teaching, and Physiology and Hygiene. All persons present and applying for an examination, with the intention of teaching, and if convinced that such persons are of good moral character, and are competent to teach successfully the foregoing branches, he shall give such persons certificates, ranking in grades to correspond with the relative qualifications of the applicants, according to the standard adopted; but he shall not license any person to teach who is given to profanity, drunkenness, gambling, licentiousness or other demoralizing vices, or who does not believe in the existence of a Supreme Being; nor shall he be required to grant

private examinations.  He may *cite to re-examine any person* holding a license and under contract to teach any free school within his county, and, on being satisfied by a re-examination, *or by other means*, that such person does not sustain a *good moral character*, or *that he has not sufficient learning and ability to render him a competent teacher*, he may, for these and *other adequate causes*, revoke the license of such person," etc.    Acts of the General Assembly of 1893, p. 335.

Under this act, an examiner may revoke the license of a teacher in the public schools for the following causes only :   (1) When he is satisfied that he does not sustain a good moral character; (2) that he has not sufficient learning and ability to render him a competent teacher ; (3) "and for other adequate causes."   The correct decision of the question in this case depends on the proper interpretation of the words "and for other adequate causes."    What do they mean ?

It is a rule of statutory construction that general words following specific terms *ejusdem generis* should be limited by reference to the specific words, and should be construed as including only all other persons, articles, things, or whatever they may be, of the like nature and quality as those designated by the particular words. Sedgwick on Statutory Construction, (2 Ed.), pp. 360, 361 ; Endlich on Interpretation of Statutes, secs. 400–407; Sutherland on Statutory Construction, secs. 268–276.   As for example, "the Sunday Act (29 Car. 2, c. 7), which enacts that 'no tradesman, artificer, workman, laborer, or *other person* whatsoever, shall do or exercise any labor, business or work of their ordinary callings upon the Lord's day' has been held not to include a coach proprietor, or a farmer, or, no doubt, an attorney ; the word 'person' being confined to those of callings like those specified by the preceding words.   For a similar reason, the 20 Geo. 2, c. 19, which empowers justices to

determine differences between masters and servants in husbandry, artificers, handicraftsmen, and persons in some other specific employments, and 'all *other laborers,*' does not include a domestic servant, or a man employed to take care of goods seized under a writ; for though, in the abstract, they may be 'laborers,' their employments have no analogy with those specified." And it was held that "11 Geo. II, c. 19, which authorizes the distress for rent of corn, grass, or *other product* growing on the demised lands, includes only products similar to grass and corn, but not young trees, which, though unquestionably products of the land, are of a different character from the products specified by the earlier terms." It was held that, in a statute which provides that "any married woman whose husband, either from drunkenness, profligacy, or any *other cause,* shall neglect or refuse to provide for her support, shall have the right in her own name to transact business, and to receive and collect her own earnings," the words "any other cause" "must be understood as referring to causes of a kind with those previously specified, and not to include mere physical and mental incapacity, nor any temporary inability of the husband, in consequence of sickness, to support his wife." *King* v. *Thompson,* 87 Pa. St. 365. So, "in a grant of power to remove for incompetency, improper conduct, or *other cause satisfactory to the board,* the words 'other cause' were construed to mean 'other like cause'; *i. e.,* one affecting the officer's fitness for the office." *State* v. *McGarry,* 21 Wis. 496.

The act under consideration is devoted almost exclusively to the prescribing of the qualifications of a teacher. He must be competent to teach certain branches of learning. To prove his competency, he must stand an examination. He must be a person of good moral character, not given to profanity, drunkenness, gambling, licentiousness, or other demoralizing vices, and

must believe in the existence of a Supreme Being. To such persons the examiner is required to grant license. Immediately after prescribing these qualifications, the act says: "He (examiner) may cite to re-examine any person holding a license and under contract to teach any free school within his county, and on being satisfied by a re-examination, or by other means, that such person does not sustain a good moral character, or that he has not sufficient learning and ability to render him a competent teacher, he may, for these *and other adequate causes*, revoke the license of such person." By "other causes" I clearly understand kindred causes are meant; that is to say, causes affecting the teacher's fitness for the place he fills. According to the rule stated, this is the only interpretation which can be legitimately given to them in the connection they stand in the act.

For the reasons indicated, I think the revocation of appellee's license to teach for the cause stated was without authority. As there is no question about the damages that resulted from this act, I think the judgment of the circuit court should be affirmed.