MORRILTON WATERWORKS IMPROVEMENT DISTRICT *v.* EARL.

Opinion delivered January 10, 1903.

1. IMPROVEMENT DISTRICT—POWER TO REMOVE MEMBERS OF BOARD.—If it be assumed that city councils may remove members of a board of improvement, they cannot do so except for cause, and then only after such members have been notified and given an opportunity to be heard in their defense. (Page 7.)

2. SAME—POWER OF COUNCIL TO ABOLISH.—A municipal corporation has no express or implied authority to abolish an improvement district, or to refuse to make an assessment required to complete the proposed improvement, save where the cost of the improvement exceeds 20 per centum of the assessed value of the real property. (Page 8.)

3. SAME—VALIDITY OF ORDINANCE.—An ordinance abolishing an improvement district upon the ground that the making of the proposed improvement has been found to be impracticable, and that a large majority of the property owners within the district have petitioned the council to repeal the ordinance creating the district, is void. (Page 14.)

Appeal from Conway Circuit Court in Chancery.

JOHN FLETCHER, Special Judge.

Reversed.

H. D. Cammack, O. T. Bentley and Carroll Armstrong, as the Board of Improvement of the Morrilton Waterworks Improvement District, sued in equity in the Conway circuit court to foreclose a lien on the property of appellees, L. M. Earl and others. It is alleged in the complaint that the improvement district for the pur-

pose of building, maintaining and operating a system of waterworks had been duly established, embracing the corporate limits of the city of Morrilton; that the plaintiffs constituted the board of improvement, and that the defendants owed taxes that were delinquent, and that all steps necessary to authorize the bringing of the suit had been taken.

Defendants answered, denying that plaintiffs composed the board of improvement, or that any one of them was a member thereof.

Upon the trial, by leave of the court, an amendment to the answer was filed, alleging that on the 5th day of May, 1902, plaintiffs had been by the city council of Morrilton removed as commissioners, and others appointed in their stead, who had taken the oath and entered upon the performance of their duties. That the new board had appointed a collector of the district, to whom the defendants had paid the taxes sued for.

By leave of the court before the trial, it was shown that O. T. Bentley had resigned, and E. E. Mitchell had been appointed by the other members of the plaintiff board, and he was substituted in place of said Bentley.

The agreed statement of facts was substantially to the following effect:

An improvement district for the purpose of erecting a system of waterworks, embracing the entire limits of the city of Morrilton, was legally established, and on the 15th day of May, 1899, Carroll Armstrong (one of the plaintiff board) B. F. Wilson and M. A. Dowdle were appointed a board of improvement, and in due time qualified and entered upon their duties, and acted till March 22, 1900, when M. A. Dowdle resigned, and O. T. Bentley was appointed by the other members of the board, and legally qualified. On April 12, 1901, B. F. Wilson resigned, and the other members of the board appointed H. D. Cammack, and he at once qualified, and after this suit was begun O. T. Bentley resigned, and E. E. Mitchell was appointed by the other members of the board, and legally qualified. At the commencement of the suit, only one member, Carroll Armstrong, who had been appointed by the city council remained, the others having been appointed by the board to fill vacancies occurring from time to time.

The board, as originally constituted, and as continued by the filling of vacancies, had caused plans of the system to be

made and an estimate of the cost, and reported the same to the city council, and the proper assessment had been made. A contract had been let for building the system of waterworks. A survey and complete plans had been made, and a contract made to pay for it. The board had continuously in good faith tried to carry out the law and build the waterworks, had charge of the books and papers, and was acting and endeavoring to carry out the law when the suit was begun.

On April 21, 1902, a large majority, both in number and value, of the owners of real property within said waterworks district petitioned the council to abandon the district. On the same day the council, by an ordinance reciting that "the making of said improvement has been found to be impracticable, and a large majority of the property owners within said district have petitioned said council to repeal the ordinance" creating the district, attempted to revoke the authority to prosecute the work, but directed the debts already incurred to be paid. On May 5, 1902, the plaintiffs having failed, through oversight, to make the annual report required by law (Acts 1895, p. 205), an ordinance removing plaintiffs from the board of improvement and appointing their successors was passed without notice to plaintiffs. It was agreed that the ordinance purporting to remove plaintiffs from the board and to appoint their successors was not made because the plaintiffs refused to prosecute, but because they refused to abandon the enterprise.

The chancellor held that the city council had power to abolish the district, and to remove the members of the board, and dismissed the complaint. Plaintiffs have appealed.

*J. F. & Jordan Sellers,* for appellant.

Municipal powers are strictly construed. 31 Ark. 462; 45 Ark. 454; 36 Mich. 416; 1 Dill. Mun. Corp. § 89. An improvement district is a separate entity. 42 Ark. 161; 55 Ark. 156; 67 Ark. 30; 14 L. R. A. 766; 66 Ark. 40; 42 N. J. L. 575; 55 Am. Rep. 65. In judicial proceedings under special statutes the court has refused to go beyond the letter. 40 Ark. 290; 43 Ark. 150; 45 Ark. 458; 54 Ark. 627; 51 Ark. 35; 33 Ark. 740; 28 Ark. 359; 40 Ark. 124. The legislature intended that the ordinance should be irrepealable. Sand. & H. Dig., § 1186; Acts 1895, p. 82. In the absence of a statute, the citizens cannot dissolve a municipal corporation. 15 Am. & Eng. Enc. Law, 1198; 71 Tex. 70; 1 Dill.

Mun. Corp. 167.   The proceeding is a contract, and rights have vested.   55 Ark. 157; 12 Ark. 352; 17 Am. & Eng. Enc. Law, 245; 1 Dill. Mun. Corp. § 314; 22 Vt. 571; 49 Ia. 147; 21 Cal. 119; 64 Fed. 157; 1 Thomp. Corp. § 1019. The order of removal is void. 13 Pet. 225; 42 Ark. 161.   The implied power of removal does not apply.   Sand. & H. Dig., § 5332; 28 Cal. 602; Mech. Pub. Off. 405; 19 Am. & Eng. Enc. Law, 562; 383; 94 N. Y. 592; 32 N. Y. 358; 42 Pac. 963; 4 Blackf. (Ind.), 116; Mech. Pub. Off. § 120; 40 Mich. 585; 45 Ill. 397; 81 Ky. 67; 14 Ore. 98; 52 N. Y. 478. There was no vacancy in the council.   21 L. R. A. 539; 97 N. Y. 271; 7 Col. 612; 7 Ind. 326; 49 Cal. 407; 47 Mo. 301; Throop, Pub. Off. § 420.

*A. F. Vandeventer, N. T. Hawkins* and *Rose, Hemingway & Rose,* for appellees.

The city council had power to remove the commissioners. Sand. & H. Dig., §§ 7375, 7376; Tied. Mun. Corp. 83; Mech. Pub. Off. § 445; 19 Am. & Eng. Enc. Law, 562; 13 Pet. 288; 103 U. S. 232; 39 Ark. 211; 4 Sandf. L. 109; 5 Barb. 43; 20 Wend. 585; 39 Ark. 211-215.   The council had power to abandon the improvement.   94 Ill. 562; 7 Am. & Eng. Corp. Cas. 452; 55 N. E. 679; 58 N. E. 301.   Quo warranto proceeding can be restored to only where franchises have been usurped or forfeited.    13 Enc. 'Pl. & Pr. 386; 3 Ark. 585; 5 Ark. 595; 48 Ark. 321.

BATTLE, J.   The three members who composed the board of improvement of the "Morrilton Waterworks Improvement District" were appointed for the accomplishment of a given result—the construction of waterworks.   Their term of office will not expire until the works are completed.   This is clearly indicated by a statute which provides that "vacancies that may occur after the board shall have been organized shall be filled by the remaining member or members; but if all the places on the board shall become vacant, or those appointed shall, after qualification, refuse or neglect to act, new members shall be appointed by the council, as in the first instance."   Sand. & H. Dig., § 5327.   No other provision for the election or appointment of successors in office to them is made. The statutes do not expressly give the city council of Morrilton power to remove them, but, assuming without deciding that it has the power, we think it is evident that it cannot do so except for

cause, and that the power cannot be exercised without notice and hearing, and that the existence of the cause must first be determined after notice has been given to them of the charges made against them, and they have been given an opportunity to be heard in their defense. Mechem, Public Officers, §§ 405, 454, and cases cited; *Lee* v. *Huff,* 61 Ark. 494; *Field* v. *Com.* 32 Pa. St. 478; *State* v. *St. Louis,* 90 Mo. 19; *Dullam* v. *Willson,* 53 Mich. 392; *State* v. *Chatburn,* 63 Iowa, 659.

It follows, then, that the effort of the city council of Morrilton to remove the members of the board of improvement of the "Morrilton Water Works Improvement District," and to appoint others in their stead, without first giving them notice of any charges against them, or an opportunity to be heard . in their defense; was without effect and void.

On the 21st of April, 1902, the city council of Morrilton, upon a petition of the majority of the owners, in value, of the real property in that city, passed an ordinance by which it undertook to abolish or dissolve the "Water Works Improvement District" for all purposes except the payment of debts already contracted. The attempt to remove the members of the board of improvement and appoint others in their stead was made on the 5th of May, 1902, to aid in the accomplishment of the same object; the removal having been made because the members removed refused to abandon the construction of the waterworks, and the new members having been appointed for the purpose of "winding up the affairs of the district, paying its debts, and abandoning the enterprise." Did the city council have the power to abolish or dissolve the district?

Judge Dillon, in his work on Municipal Corporations, says: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of powers is resolved by the courts against the corporations, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract,

or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute. These principles are of transcendent importance, and lie at the foundation of the law of municipal corporations. Their reasonableness, their necessity, and their salutary character have been often indicated, but never more forcibly than by the late learned Chief Justice Shaw, who, speaking of municipal and public corporations, says: "They can exercise no powers but those which are conferred upon them by the act by which they are constituted, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the accomplishment of the purposes of their association. This principle is derived from the nature of corporations, the mode in which they are organized, and in which their affairs must be conducted." 1 Dillon, Municipal Corporations (4th Ed.), § 89.

In *Texarkana* v. *Leach,* 66 Ark. 40, this court followed the rule announced by Judge Dillon. In that case the court held that cities of the second class had no authority, express or implied, to vacate streets. The court said: "Texarkana being a city of the second class, the ordinance of its city council is void. The municipal authorities of a city or town cannot vacate a street, or any part of it, without the authority of the legislature. This power does not inhere in a municipality. * * * The statutes of this state authorize municipal corporations to lay off, open, widen, straighten, establish and improve streets, and keep them in repair, but they do not expressly, impliedly or incidentally confer upon cities of the second class or incorporated towns authority to vacate streets."

After a diligent search we have failed to find a statute whereby the power to abolish or dissolve an improvement district is expressly conferred upon a city or town, or its council, or where it is necessarily or fairly implied or incident to any powers expressly granted, or any declared object or purpose of such corporations to which it is essential. A brief review of the statutes upon the subject will show that this statement is correct.

Section 5321 of Sandels & Hill's Digest confers upon municipal corporations the power to assess all the real property within

the limits of the corporation, or within any district thereof, for the purpose of making any local improvement of a public nature.

Sections 5322 and 5323 provide that, upon petition of ten resident owners, the city or town council shall lay off the city or town, or any portion of it, into "improvement districts" for such local improvements, and designate them by numbers; and that the order made for that purpose shall be published. And section 5324 provides that if, within three months after such publication, a majority in value of the owners of real property within such district adjoining the locality to be affected shall present a petition praying that the contemplated improvement be made, and that the cost thereof be assessed upon the real property in the district, the council shall appoint three residents of the district as a board of improvement.

By section 5329 it is made the duty of the board to form plans for the improvement designated in the petition, and procure estimates of the cost, employing necessary engineers and agents, and providing for their compensation; and it provides that such compensation, with all other necessary expenditures, shall be taken as a part of the cost of the improvement, and that "if, for any cause, the improvement shall not be made, said cost shall be a charge on the real property in the district, and shall be raised and paid by assessment in the manner hereinafter prescribed."

By sections 5333 and 5334, as amended by the act of May 8, 1899, the board of improvement is required to report the plan formed by it and the cost of the improvement to the council, which is to assess the cost on the real property of the district, and to provide by ordinance that the same shall be paid in successive annual installments, not exceeding "one per centum of the total amount of the county assessment of the same property next preceding that in which such assessment is made;" and to the last-named section this proviso is added: "No single improvement shall be undertaken which alone will exceed in cost twenty per centum of the value of the real property in such district."

Section 5366 is as follows: "If the assessment first levied shall prove insufficient to complete the improvement, the board shall report the amount of the deficiency to the council, and the council shall thereupon make another assessment on the property previously assessed for a sum sufficient to complete the improvement, which shall be collected in the same manner as the first

assessment. *Provided,* that when any work has been begun, under the provisions of this act, which shall not be completed and paid for out of the first or other assessment; it shall be the duty of the said council to make such assessment for its completion, from year to year, until twenty per centum on the value of the real property of such district shall be collected and consumed in such improvement, unless it be sooner completed; and the performance of such duty may be enforced by mandamus at the instance of any person or board interested."

The district is first established. The board is then appointed. It ascertains the cost of the proposed improvement, and reports the same to the council. If it exceeds twenty per centum of the assessed value of the real property in the district, the statute says that the improvements shall not be undertaken; but if it does not, an assessment shall be made to pay for the same. If this proves insufficient, the board is required to report the deficiency to the council, and it makes another assessment to complete the improvement. If it refuses to make the assessment, it can be compelled to do so by mandamus, at the instance of the board. It cannot lawfully withhold from the board the means for completing the improvement when the cost does not exceed twenty per centum of the assessed value of the real property in the district. This is virtually a denial to it of the power to abolish or dissolve the district. It may refuse to make an assessment when the cost of the improvement exceeds twenty per centum of the assessed value of the real property. In this way, and in no other, is it authorized by the statute to defeat the improvement.

The statutes do not place the board of improvement under the supervision and control of the city council, to be used as an agent to carry into effect its wishes or commands. *Fitzgerald* v. *Walker,* 55 Ark. 157. But they give the board complete control over the construction of the improvement, and invest it with the power to make all contracts necessary to be made in respect thereto, with the power to borrow money, to institute suits in its name to enforce the payment of the assessments upon the real property in its district, to disburse the money collected to pay the cost of the improvement, and with the power, except as aforesaid, to compel the city council by mandamus to make further assessments upon real property to complete the improvement. Sandels & Hill's Digest, §§ 5341, 5350, 5363, 5366, 5368, 5370. All of which statutes tend

to show that the city council has not the power to abolish an improvement district and prohibit the construction of the improvement, unless it be by refusing to make an assessment when the estimated cost of the improvement exceed twenty per centum of the assessed value of the real property in the district.

But it is said that section 5329 provides: "If, for any cause, the improvement shall not be made, said cost shall be a charge on the real property in the district, and shall be raised and paid by assessment in the manner hereinafter prescribed;" and that this may imply that the work on the improvement may be stopped after its commencement. But we do not think that this statute can be reasonably construed in such manner. The cost referred to is the expense of ascertaining the cost of the improvement. This is incurred before any assessment is made. The failure to make the improvement is that which the statute provides shall occur when the cost thereof exceeds twenty per centum of the assessed value of the real property in the district. This is the only failure the statute contemplates, and it occurs after the expenses referred to are incurred, and this is the reason, it seems to us, why the statute provides that it shall be raised and paid by assessment in the manner prescribed by law. The "any cause" referred to is certainly not a cause for which the statutes do not authorize a discontinuance of the improvement.

*City of Chicago* v. *Barbian,* 80 Ill. 482, and *City of Chicago* v. *Weber,* 94 Ill. App. 561, have been cited to show that a city council can discontinue the construction of an improvement by an improvement district. But they have no application to the question in the case before us. The former case was a proceeding to compel, by mandamus, "the levy and collection of a tax for the payment of a sum ascertained and reported by a jury and adjudged by a court of competent jurisdiction to be compensation for damages to be sustained by the relator to certain property by reason of the widening of North State street in the city of Chicago." After the return of the jury, ascertaining and reporting the amount of damages to be sustained to the relator's property, the respondent (City of Chicago), by an ordinance, repealed the ordinance under which the proceedings for condemnation were had, and discontinued all further proceedings for making the improvement thereby contemplated. The court held: "The judgment of the court on condemnation of property for public use is conditional, depending on

the payment of the damages found, and the party seeking condemnation acquires no vested right until such payment is made or the sum deposited, and the rights of the parties are reciprocal, so that the property owner has no vested right in the damages found by the jury until the same is paid or deposited. If the property, however, is taken or damaged by the owner's consent before compensation is made, the owner will then have a vested right in the compensation when ascertained." And further held: "A proceeding to condemn real estate for public use may be abandoned at any time after the damages are assessed, and before payment thereof or its deposit for the owner, when the property has remained unmolested, and the court will not in such case compel the payment of the compensation fund, by mandamus."

The latter case was an action *ex delicto*. The village of Rogers Park undertook by ordinance to improve certain streets within its limits by the construction of a tile sewer therein. Afterwards, such village was annexed to and became a part of the city of Chicago, which abandoned the improvement. The plaintiff sued the city of Chicago for damages sustained by him on account of the abandonment of the improvement. The court held: "A municipal corporation, acting under the statute, is the exclusive judge of whether a local improvement which it is authorized to make shall be made, and if it orders such an improvement to be made and to be paid for by means of a special assessment, and such assessment is made and confirmed as prescribed by the statute, such corporation does not thereby become legally bound to make the improvement, but may lawfully abandon it and all proceedings in relation to it."

The questions in the case at bar were not presented in either of the cases cited. The question for our consideration arises under the peculiar statutes of this state, and no statutes like them were considered in the cases cited. In those cases the court considered the control of a city council of a city of Illinois over the improvements of streets which were commenced and continued by it without the intervention of an improvement district or other organization. In that state cities have the power "to lay out, to establish, open, alter, widen or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds and vacate the same." Cothran's Annotated Edition of Revised Statutes of Illinois, c. 24, art. 5, 7th, and Starr & Curtis, Annotated Statutes of Illinois, c. 24,

art, 5, sub 7, p. 63. The statutes of this state give them no such power over improvements, like waterworks, in course of construction by an improvement district.

The only reason for abolishing the "Morrilton Waterworks Improvement District" is set out in the preamble to the ordinance, passed for that purpose, in the following words: "The making of said improvement has been found to be impracticable, and a large majority of the property owners within said district have petitioned said council to repeal the ordinance aforesaid." The ordinances referred to were the ordinances establishing the district and making assessments upon the real property therein to pay the cost of the improvement. This was insufficient.

Reversed and remanded, with instructions to the court to render a decree in this case in accordance with this opinion and the statutes in such cases made and provided.

HUGHES, J., (dissenting). The controlling question in this case is not without difficulty. It is, did the city council have the power to pass the ordinance to abandon this improvement, and to abolish the improvement district for all purposes, except a settlement of outstanding debts, etc., of the district? I recognize the general rule as stated by Judge Dillon in 1 Dillon, Municipal Corp. § 589.

That the formation of improvement districts can be had only under statute authorizing them is true, and that there is in the statute no express authority to abolish them and abandon an improvement begun by them seems to be also true. The assessments for the tax to make the contemplated improvement in this case was upon a petition by a majority in value of the real estate owners in the district. A majority in value of the real estate owners of the district has been provided for. The party holding the contract for the construction of the waterworks, it is understood and conceded, is willing to surrender it, and makes no objection to the abandonment of the improvement. Was there any power to abandon it?

If true that there were vested rights that would be violated or disregarded by the abandonment of the improvement, the abandonment of it, so far as it violated vested rights, would be unlawful, and could not be tolerated. But we understand there are no vested rights to be violated in this case. In such a case, it would be remarkable and extraordinary if there was no power to abandon

this improvement—if the board of commissioners was obliged to go ahead and collect the assessment, and make the improvement, although the majority in value of the real estate owners in the improvement district, for good reason, have petitioned for its abandonment. The work may have been demonstrated to be impracticable.

It would seem that the power to abandon the improvement must necessarily exist, when there is a good reason for such abandonment. There are many cases which recognize this power in cases that are similar in principle to this one, and we cite quotations from some most in point.

In *City of Chicago* v. *Barbian*, 80 Ill. 482, the city instituted condemnation proceedings for the purpose of widening a street, and the compensation to be paid to the owners of property to be taken or damaged was ascertained by a jury, and a conditional judgment was entered. Also, although this is not shown in the report of the case, a special assessment was made by commissioners appointed by the court to pay the compensation awarded, and was returned into court. Subsequently the city council repealed the ordinance ordering the improvement and dismissed the proceedings. Barbian, an owner of property in respect of which compensation had been awarded, petitioned for a writ of mandamus to compel the city to levy and collect a tax to pay his compensation or damages. The trial court overruled a demurrer to the petition, and awarded the writ, but the supreme court reversed the judgment, on the express ground that the city had the right to abandon the proposed improvement and dismiss the proceedings.

In *City of Chicago* v. *Weber*, 94 Ill. App. 562, the court held: "When, in the progress of proceedings to make improvements by special assessment under the act to provide for the incorporation of cities and villages, a village becomes annexed to a city, the city has the same power in respect to the proposed improvement and assessment which the village had prior to such annexation.

"The village of Rogers Park levied a special assessment, and issued its orders to the commissioners for making the same, to be paid only out of the money received from the collection of such assessment. Afterwards such village was annexed to and became a part of the city of Chicago. *Held*, that the city had a lawful right to discontinue the assessment proceedings and abandon the

improvement, to pay for which the assessment was made." Citing numerous cases.

In that case the court said: "If the city may abandon such an improvement as the opening or widening of a street after the compensation in respect to private property proposed to be taken or damaged has been ascertained by the verdict of a jury and awarded by a judgment, and an assessment to pay the amount awarded has been made, confirmed and partially collected, *a fortiori* there may be an abandonment of an assessment of benefits for the improvement of a street, in which proceeding no question of damage to private property is involved. The owners of property assessed on account of special benefit to accrue to it by reason of the proposed improvement of a street have no vested right to continuance of the proceedings. But counsel for appellee contend that the city owed to the commissioners, who made the assessments set forth in the declaration, and under whom appellee claims, the duty of continuing and prosecuting the proceedings and collecting the assessment." And the court then proceeds to show at length that the commissioners have no vested right to have the improvement carried out. A like principle is involved in *Brokaw* v. *Terre Haute,* 7 Am. & Eng. Corp. Cases, 452; *Noonan* v. *People* (Ill.), 55 N. E. 679; *McPike* v. *Alton,* 58 N. E. 301.

Section 5329 Sandels & Hill's Digest, in the last sentence of that section, provides that, "if for any cause the improvement shall not be made, said costs shall be a charge on the real property in the district, and shall be raised and paid by assessment in the manner hereinafter prescribed." Does not this imply that the work may be stopped after it is commenced?

I am of the opinion that the power to discontinue and abandon such improvement, when the abandonment does not violate vested rights, is implied, and exists in the city council, and was properly exercised in this case.