## CARSWELL *v.* HAMMOCK.

### Opinion delivered January 22, 1917.

1. CERTIORARI—REVIEW OF ACTION OF CITY COUNCIL REMOVING IM-PROVEMENT DISTRICT COMMISSIONERS.—The action of a city council in ordering the removal of certain commissioners of certain improvement districts is subject to review on certiorari in the circuit court.

2. MUNICIPAL CORPORATIONS—REMOVAL OF COMMISSIONERS OF BOARDS OF IMPROVEMENT DISTRICTS—"CAUSE."—Commissioners of boards of improvement districts may be removed by a city council for cause; *held*, "cause" or "sufficient cause" means "legal cause," and not any cause which the council may think sufficient; the cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.

3. CERTIORARI—REMOVAL OF COMMISSIONERS OF BOARD OF IMPROVE-MENT.—The question to be determined, when the action of a city council in removing certain commissioners of a board of improvement is under review on certiorari, is whether or not the council acted arbitrarily, and without legally sufficient evidence to support its action.

4. IMPROVEMENT DISTRICTS—REMOVAL OF COMMISSIONERS—SUFFICIENT EVIDENCE.—Certain charges were made against the commissioners of the boards of certain improvement districts. *Held*, the charges were sufficient to warrant the city council in removing the commissioners from office, and that the evidence before the council furnished a substantial basis for its action, and that its action was based upon legal cause.

Appeal from Cleburne Circuit Court; *J. I. Worthington*, Judge; reversed.

*M. E. Vinson*, for appellants.

1. The council had authority to remove the commissioners. Act No. 81, March 23, 1909. A hearing was had and cause shown. 39 Ark. 211; 29 Cyc. 1371; 136 Ga. 376; Am. Ann. Cases, 1912 C, 372; 71 Ark. 4; 94 Ark. 49; Kirby's Digest, §§ 5670, 5667.

2. The charges were sufficient. 39 Ark. 211; 29 Cyc. 1410 and note 31; 113 Mo. 202; 21 Ga. 280; 55 Ark. 148; Throop Publ. Officers, §§ 304, 354, 394-6; Kirby's Digest, §§ 6636, etc.; 29 Cyc. 1410; 9 Enc. of Ev. 193-6.

3. The motion to quash the writ should have been sustained. Certiorari did not lie. 73 Ark. 606; 18 *Id.* 382; 35 *Id.* 180.

*W. L. Thompson* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellees.

1. Certiorari does not lie to review the judicial action of the council in the removal of officers. 62 Ark. 106; 109 *Id.* 101. Cause must be shown. Act 81, Acts 1909.

2. The charges must be sustained by legal evidence. 23 Am. & E. Enc. Law, 450; 23 N. E. 1061; 37 *Id.* 117; 59 N. J. L. 412; 28 Atl. 311; 48 *Id.* 767; 68 Pac. 507; 28 N. Y. App. Div. 73; 35 *Id.* 430; 51 *Id.* 173; 57 *Id.* 281; 89 *Id.* 296; 92 *Id.* 243; 53 Minn. 238; 55 N. W. 118.

3. Mere mistakes of judgment will not justify the dismissal of an officer. 43 Kans. 330; 23 Pac. 479; 7 Idaho 581; 65 Pac. 434; 80 Mich. 287; 45 N. W. 78; 64 Oh. St. 532; 60 N. E. 627; 16 So. 655; 96 N. Y. 672. Not even a technical violation of the law is shown. 55 Ark. 148 and cases *supra.* The charges are trifling and frivolous—no cause of removal was shown.

SMITH, J. Appellees are the commissioners of Waterworks Improvement District No. 1, and of Sewer Improvement District No. 1, of the Incorporated Town of Heber Springs, and were engaged in the performance of their duties as such when, on January 5, 1916, resident property owners within such districts filed with the common council of said town sworn charges in writing against them, wherein it was prayed that said charges be investigated and, if found true, that the said commissioners be removed from office. Due notice of these charges was given, and the hearing thereof was appointed for January 18, 1916. No action was taken at that date and the council adjourned the hearing until January 19th, when a further adjournment was taken to January 21st. It is said these adjournments were taken in order that the commissioners might make any explanation they desired and to have time to right the alleged wrongs complained of. At the meeting on January 21st these charges were formally presented in writing, and may be summarized

as follows: That the commissioners let the contract to an unknown engineer privately and refused to permit other engineers to submit preliminary plans and specifications for the proposed improvements, and that the plans of this engineer were wholly unsuited to the purpose for which they were designed. That these plans and specifications were approved without having been submitted to either the Actuarial Bureau or to the State Board of Health, but after said plans had been paid for and the contracts for the construction of the improvements had been let, they were then submitted to said bureau and board and disapproved by each of them. That other changes in the plans which had been approved by the council were made by the commissioners to the material injury of the taxpayers. That the contract for the construction of the improvements was let privately and at an excessive and exorbitant figure, and bonds were not exacted of the contractors as required by law. That a contract was made with James Gould, to whom the bonds were sold, by which Gould reserved the right to name the depositary for the proceeds of the bonds, and reserved in his own hands $10,000.00 of the proceeds thereof with the agreement that this sum should not be used by the districts until after all other funds had been exhausted, and that the contract for the sale of the bonds to Gould was contingent and conditional upon the letting of the contract for the construction of the improvements to a contractor satisfactory to him, and that pursuant to this agreement an improvident contract was let; nor was any proper bond required for the performance of this contract.

The council had before it all the records and papers of the districts and heard the charges upon the affidavits of the complaining property owners. These affidavits gave substantial support to all the charges. It was shown that affidavits were presented in order that the proof might be in writing, but it was also shown that affiants were present at the meeting and offered then to be sworn and to be cross-examined by the commis-

sioners, but this was not done.   After the hearing of
these charges the council, by a unanimous vote, ordered
the removal of the commissioners.

Thereafter this proceeding by certiorari was begun
to review the action of the council and to quash the
order of removal, and upon the hearing in the. court
below that action was taken and the order of the council
quashed, and the commissioners were restored to their
offices, and this appeal has been duly prosecuted to
reverse that action.

(1)   It is first insisted by respondents that cer-
tiorari will not lie to review their action in ordering the
removal of the commissioners.   But we do not agree
with them in this contention.   In making the order of
removal, respondents were acting in a quasi-judicial
capacity, and their action was, therefore, subject to
review on certiorari.   *Pine Bluff Water & Light Co.* v.
*City of Pine Bluff*, 62 Ark. 196; *State ex rel. Attorney
General* v. *Railroad Commission of Arkansas*, 109 Ark.
101.

(2)   It is admitted that the council has authority
under Act. No. 81 of the Acts of 1909, page 224, to
remove the commissioners of boards of improvement
districts;. but only for cause, and after a hearing, and
upon due notice.

As defining the right of removal, appellees cite
the very able opinion of Judge Mitchell in the case of
*State ex rel. Hart et al.* v. *Common Council of the City of
Duluth et al.*, 53 Minn. 238, 55 N. W. 118.   This has
become a leading case on this subject, and, in discussing
the right of removal, it was there held that, where the
power of a municipal body to remove from office is not
discretionary, but only for cause, after notice and hear-
ing, the proceedings are judicial in their nature and may
be reviewed on certiorari.   And in a discussion of the
cause which is sufficient to justify removal, it was there
said:

" 'Cause,' or 'sufficient cause,' means 'legal cause,'
and not any cause which the council may think suf-
ficient.   The cause must be one which specially relates

to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public."

And in the discussion of the practice in such cases it was there said that the appellate court will inspect the record to see whether the body ordering the removal of the officer had jurisdiction, and kept within this jurisdiction, and whether the charges preferred were sufficient in law; but that the court would examine the evidence, not for the purpose of weighing it, but only to ascertain whether it furnished any legal and sufficient basis for the removal.

We had occasion in the recent case of *Hall* v. *Bledsoe*, 126 Ark. 1, to consider the law applicable to the issues of this case. We there said:

"But it does not follow that the court, on hearing the writ, proceeds *de novo* and tries the case as if it had never been heard in the inferior court. This is true, because as we have already seen, the office of the writ, which has not been enlarged by statute, is merely to review for errors of law, one of which may be the legal insufficiency of the evidence, and for the purpose of testing out that question the circuit court is, by the statute, empowered to hear evidence *de hors* the record in order to ascertain what evidence was heard by the inferior tribunal, and to determine whether or not the evidence was legally sufficient to sustain the judgment of that tribunal. That question is one of law, which is subject to review like all other errors of law. *Catlett* v. *Railway Co.*, 57 Ark. 461."

(3) In this last cited case we also said that the real question to be determined by the reviewing court is whether or not the board or council whose action is under review acted arbitrarily and without legally sufficient evidence to support its action, "since we find the law to be that the court cannot, in this proceeding, review merely for errors of judgment upon legally sufficient evidence, we proceed to an analysis of the testimony for the purpose of determining whether or not

there was evidence of a substantial nature which justified the action of the board, or whether the order of removal was arbitrarily done and without any justification in fact."

(4) The court below declined to make a declaration of law that the charges preferred were legally sufficient to warrant the council's action, but held that said charges were insufficient. The sufficiency of the charges to warrant the action of the council being a question of law, we hold said charges to be legally sufficient to support that action.

As was said by Judge Mitchell in the Minnesota case, *supra*, and in our own opinion in the case of *Hall* v. *Bledsoe,* we will examine the evidence, not for the purpose of weighing it, but for the purpose of ascertaining whether it furnished any legal and substantial basis for the removal of the officers.

It remains, therefore, only to determine whether the evidence furnished the council any legal and substantial basis for its action in removing the respondents. This evidence was substantially to the following effect: That the commissioners refused to permit other engineers to submit preliminary plans or to make bids for the supervision of the work, but employed an engineer who was unknown to any of the commissioners, and that this engineer prepared plans which were insufficient and unsuitable. That the council employed an engineer to advise with the commissioners, but they refused to consult with him and denied him the privilege of examining the preliminary plans. That the commissioners were urged to submit their preliminary plans to the Actuarial Bureau and to the State Board of Health before letting the contract for the construction of the improvements, but refused so to do. That after letting the contract and after the contractors had commenced shipping material to begin the work, the plans were so submitted, and were disapproved by both the Actuarial Bureau and the State Board of Health, and material changes were then required in the plans to conform to the recommendations of these boards. That one of

the commissioners had stated to the council that more than a mile of each system had been eliminated from the plans without his knowledge or consent.   That the commissioners refused to receive competitive bids for the construction of the improvements, although there were contractors who were desirous of bidding on the work.   But the work was let privately at what the council regarded as an excessive and exorbitant price. That after the contracts were so let the commissioners failed and refused to require a bond to be given as provided by Sections 5719 and 6366 of Kirby's Digest. The bond approved by the commissioners was signed by the "Inland Construction Company" (the contractor) by H. M. Johnson, its president, and F. P. Johnson, by H. M. Johnson, his attorney-in-fact.   The body of the bond shows that H. M. Johnson is a resident of Chandler, Oklahoma, and F. P. Johnson is a resident of Oklahoma City, Oklahoma.   It does not appear whether the Inland Construction Company is a corporation, or a co-partnership, but it does appear that its situs is Chandler, Oklahoma, and its sureties are non-residents of the State, and they were not required to qualify as to their solvency.   That the commissioners issued bonds in the sum of $90,000.00 and permitted the bond buyer to designate the depositary for the proceeds · of the sale thereof, and that two banks were designated by the bond buyer for that purpose, one of which was without the State, and that no bond was required of either of these depositaries.   In addition, it was agreed that the bond buyer should reserve in his own hands $10,000.00, which should not be used by the commissioners for any purpose until all other funds had been exhausted.   That the proposition for the purchase of the bonds was conditioned upon the fact that the contract for the construction of the improvements should be let to a contractor satisfactory to the bond buyer. That this proposition was dated October 25, 1915, and was accepted and acted upon on October 26th, and that the bid of the successful contractor was received that night, and the contract was let on the following day.

The home of the contractor is that of the engineer. At that time the plans had not been submitted to either the Actuarial Bureau or the State Board of Health and no opportunity was offered to other contractors to bid on the work.

The commissioners testified, in extenuation and justification of their action, that it was not customary to employ engineers upon competitive bidding and that a reputable engineer could not be so employed and that they employed an engineer of good reputation. That they were not required by the law to submit their plans to either the Actuarial Bureau or the State Board of Health. That they had authority to let the contract privately and did so to prevent a combination on the part of the contractors to compel a higher price for the work. That they exercised their best judgment in the selection of depositaries and that the ones so selected were, and are, entirely solvent. That they regarded the provision that the contractor be satisfactory to the bond buyer a salutary one, as the purchaser of the bonds is vitally interested in the character and responsibility of the contractor, and this interest inures to the benefit of the districts. That the changes made in the plans were made to meet the suggestions of the Actuarial Bureau and the State Board of Health, and that it is inconsistent in the council to demand that this action be taken and then to complain that the advice of that bureau and board was followed. That they regarded it as proper that a contracting company residing in the same town with the engineer be selected, as the engineer was personally acquainted with that company and knew its ability to perform its contracts, and that there was no evidence that the engineer was connected in any way with the company. That although the commissioners made a mistake in taking from the contractors a bond signed by non-resident sureties, they had acted in good faith in so doing under the belief that solvent non-resident bondsmen would suffice. They admit that in the final plans a line of sewers and water mains which appeared on the first plans was omitted, but that this

was a mistake of the engineer, and as soon as his attention was called to the mistake he remedied it, and that they should not be removed for a mistake on the part of the engineer for which they were in no way responsible.

It will be borne in mind that we are not passing upon the 'sufficiency of this evidence *de novo*. Our province is only to see whether it furnished a substantial basis for the action of the council. Nor are we required to say whether the proof upon any one of these charges furnished this basis. The council had the right to consider the proof as a whole, to decide upon its sufficiency as a whole and was not required to vote upon each separate charge without reference to the proof upon the other charges.' Viewing this evidence in this manner, we are constrained to hold that the action of the council was authorized under the law. We do not decide that these plans should have been submitted to either the Actuarial Bureau or the State Board of Health. Of necessity, the Actuarial Bureau, which. fixes the insurance rates upon property in this State, and the Board of Health both have large experience in such matters. One is interested in the prevention of fires, and the other in the suppression of disease, and these are two of the prime objects of the improvement districts themselves. ' And if these plans are to be so submitted, the wisdom of submitting them for suggestion before letting the contract, rather than afterwards, is obvious. The board was under no legal obligation to submit their plans for the examination of the engineer employed by the council, but no reason is assigned for their refusal so to do. The council might have concluded that the error in the plans which was later discovered might have been avoided had this been done.

The commissioners had the authority to let the contracts privately, but the council may have concluded that it was unwise and improvident to have done so. Certainly, the work should have been let at the lowest possible price, and it is contended that competent contractors would have contracted for the

construction of these improvements at a lower price had that opportunity been afforded.

The council might have concluded that there was not an entire identity of interest between the bond buyer and the districts and that although no law was violated as the result of the conditions imposed by the bond buyer, yet such restrictions tended to suppress competition and may have been responsible for what the council regarded as an exorbitant price for the contract.

There was a positive failure to observe the mandate of the statute in the matter of the bond, and while the explanation of the commissioners might be accepted as exculpating them from ulterior motives, yet such conduct, in connection with all the other evidence in the case, tended to show that inefficiency and gross negligence in office which constitutes the legal cause, which warrants and supports the action of the council in removing the commissioners.

It follows that there was sufficient evidence to justify the action of the council and that the circuit court erred in quashing its order. The judgment is therefore, reversed and the writ of certiorari dismissed.

WOOD and HART, JJ., dissent.