The Honorable Steve Luelf State Senator P.O. Drawer 447 Mountain Home, AR 72653
Dear Senator Luelf:
This is in response to your request for an opinion on several questions regarding Diamond City Sewer Improvement District No. 1 ("District"). According to the correspondence attached to your request, the District was established by Diamond City ordinance dated September 16, 1987, in order to finance the initial construction cost of the Diamond City collection system. Once construction was completed, Diamond City assumed responsibility for operating its collection system. The correspondence also states that an Inter-Municipal Service Agreement was entered on September 23, 1988 (and an Addendum dated March 17, 1989), between the District, the Sugarloaf Wastewater Treatment District, the City of Diamond City, and the towns of Lead Hill and South Lead Hill. A 1989 Diamond City resolution arranged for the District to enter into a $1,175,000.00 mortgage with Farmers Home Administration.
Several questions have apparently arisen following a change of officials in the City of Diamond City, and a subsequent audit of the District. The specific questions set forth in your request will be answered with reference to the facts provided.
It must be recognized, however, that the responses may be impacted by any agreement(s) between the City of Diamond City (and/or any of the other parties to the Inter-Municipal Agreement) and the District. It should be noted in this regard that the city or town within which a municipal improvement district is located may purchase or lease and operate the improvement of the district "on such terms as it may agree with the commissioners." A.C.A. 14-88-501(b) (1987).[1] The terms of any such agreement(s) must therefore be considered when reviewing the following responses. The questions are answered below in the order posed.
 1. Can the City Council disband the Sewer Improvement District when money is still owed on the debt? If so, under what circumstances?
It is my opinion that the answer to the first question is, in all likelihood, "no." It appears that the District may wind up its affairs in the manner prescribed in A.C.A. 14-88-601 to -605 (1987). These provisions require action as an initial matter on the part of the commissioners in seeking discharge from their duties. While the Arkansas Supreme Court has stated that it is not compulsory that a district wind up its affairs in this manner (Searcy Fed. Sav. Loan Assoc. v. Searcy, 221 Ark. 360,253 S.W.2d 211 (1952)), my research has not yielded general authority for a city dissolving a district independent of the board of commissioners.
 2. Can the City Council replace commissioners at will? If so, under what circumstances?
The answer to this question is "no." The commissioners can only be removed "for cause" by a two-thirds vote of the council, or by a majority vote upon petition of property owners. Section14-88-305(a) (1987) states that the city council, "by a two-thirds vote, "shall have the power to remove a municipal board of improvement or any member thereof . . . for cause only. . . ." See Martin v. Quinn, 294 Ark. 60, 740 S.W.2d 627
(1987). See also Carswell v. Hammock, 127 Ark. 110, 191 S.W. 935
(1917) (holding that "cause" shall mean "legal cause.") Subsection (b) of 14-88-305 provides for removal of the board or any members thereof by a majority vote of the city council "upon petition of the owners of a majority in assessed value of the property located within the district. . . ." See Boullioun v. City of Little Rock, 176 Ark. 489, 3 S.W.2d 334 (1928).
 3. Can the assessments we receive be used for any other purposes than to retire the debt, and for our own operations expenses?
As a general matter, funds belonging to the District must be used for "district purposes." See A.C.A. 14-88-401 (1987). It may reasonably be concluded that this would normally be limited to retirement of any debt and payment of the district's operational expenses. Reference must also be made, however, to the provisions in Chapter 89 of Title 14 of the Code which address the use of district "profits" and "surplus funds." See, e.g., A.C.A.14-89-901 to -908 (1987) (authorizing the use of so-called "profits" for paying the indebtedness of other improvement districts and obligations of the city) and 14-89-1301 to -1305 (1987) (requiring payment of surplus funds to the city for credit to the street fund in instances where the district has received state aid). The applicability of these provisions must be determined on a case-by-case basis. I lack sufficient information to determine whether they apply in this particular instance.
 4. Can the City Council charge the SID rent for the office we occupy in the city owned community center?
It is my opinion that the answer to this question is "yes." Municipal improvement districts are "bodies corporate" with the power to "contract by the corporate name." A.C.A. 14-88-210
(1987). Assuming that the amount of rent charged is reasonable, I believe that the city would be authorized to require such payment.
 5. What control does the City Council have over the decisions and duties of the SID aside from approving the Mayor's appointment of Commissioners when their term has expired, or they no longer qualify because of illness, change of residence, or some other reason? Can land owners petition the Mayor and/or the Council for a Commissioner of their choice? If so, does the petition have to be honored by the Mayor and/or the Council?
The Arkansas Supreme Court has stated, in the context of questions concerning a municipal improvement district, that a "board of improvement is clothed with the duty of conducting the affairs of the district and is impliedly vested with the power necessary for the proper administration of these affairs. . . ." Bourland v. Coleman, 187 Ark. 392, 396, 60 S.W.2d 1021 (1933). As a general matter, therefore, it may be stated that a board of improvement is not under the supervision and control of the city council. See also Town of Augusta v. Smith, 117 Ark. 93,174 S.W. 543 (1915) and Morrilton Waterworks Imp. Dist. v. Earl,71 Ark. 4, 71 S.W. 666 (1903). It must be recognized, however, as discussed above, that the District commissioners may be removed by the council "for cause." A.C.A. 14-88-305. It should also be noted that the city council hears appeals from assessments made by the District. A.C.A. 14-90-501.
With regard to the second part of this question involving a petition of landowners for appointment of a commissioner, reference must be made to A.C.A. 14-88-304(b) which requires the city council to name as commissioner the person named in a petition in the following circumstance:
 (b) Upon the filing of a petition with the council signed by five (5) or more property owners in the district affected, reciting that any commissioner is no longer a property owner in the district, accompanied by a corroborative certificate of an abstractor, the person shall automatically cease to be a commissioner. His office is declared to be vacant from the date of filing the petition, and the council that created the district shall forthwith name as commissioner of the district to fill the vacancy the person named in the petition and recommended for commissioner of the district if the person is a property owner in the district.
6. Can the city claim ownership of the assets of the SID even though they have been paid from our operating fund? Is the SID a separate entity as we have been told?
As a general matter, the assets of a municipal improvement district are not owned by the city in which the district is located. As noted at the beginning of this opinion, however, an improvement district may sell or lease its improvement to the city on such terms as the commissioners deem best. A.C.A.14-88-501(a) (1987). See also subsection (b) of 14-88-501
regarding power of city council to purchase or lease and operate the improvement. It appears that the answer to these questions will therefore depend upon the terms of the agreement or agreements between the District and the city. I cannot make this factual determination.
7. Arkansas statutes say that the city attorney shall also be the attorney for the SID. Are there any circumstances when the SID can hire an attorney who does not represent the city?
There may be circumstances, such as the existence of a conflict of interest, when the District's retention of outside counsel may be warranted. I cannot, however, in the context of an opinion, undertake an analysis of all such potential circumstances. This would require a case-by-case determination made with reference to a specific set of facts.
8. The auditor asked for the by-laws of the SID. We do not have by-laws. None were provided for us. We do operate under a letter of condition from Farmers Home Administration, and under the documents provided by Bond Council, and by advice from the former city attorney who was with the SID from its beginning. We have formalized guidelines for assessments in accordance with the requirements for paying the debt and fairness to the landowners. Is it necessary that we have by-laws?
It appears that the answer to this question is "no." My research has not disclosed a requirement in this regard.
9. The SID gives the mayor copies of our annual financial report and our annual audit, and we keep the city apprised of changes in assessments. What other obligations do we have to the city?
See response to question 5 above.
10. Does the SID have the power to hire and pay for office help without interference from the city council? May we hire the auditor of our choice? Both FHA and our former attorney have said that we can.
The answer to the first part of this question is, generally, "yes," assuming the necessity of these expenses. See A.C.A.14-91-101 (vesting municipal boards of improvement with authority to employ "agents as may be needful" and to provide for their compensation as a part of the cost of the improvement.) See also generally Bourland v. Coleman, supra.
A conclusive response to the second part of this question would require a factual review of the exact circumstances underlying the audit. I believe, however, as a general matter, that the analysis would focus upon whether that in fact constituted a necessary expenditure. See A.C.A. 14-91-101.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] This provision applies to any improvement district organized under Chapter 88 of Title 14 of the Arkansas Code, entitled "Municipal Improvement Districts Generally." I assume, although it is not stated in your request, that the District was formed under this chapter. Section 14-88-301 (1987) provides for the appointment of three commissioners in the ordinance creating the district.