WILLIAMS *v.* DENT.

4-7420                                                    181 S. W. 2d 29

Opinion delivered June 12, 1944.

*Buzbee, Harrison & Wright,* for appellant.

*Cooper Jacoway* and *Donham, Fulk & Mehaffy,* for appellee.

GRIFFIN SMITH, Chief Justice. Appellant Williams was appointed a member of Little Rock Waterworks Commission, other Commissioners being T. J. Gay and Dan M. Boone. Boone's term expired October 31, 1943; whereupon Williams and Gay nominated Edward L. Gaunt. Pope's Digest, §§ 10019 and 10020. Before action on the nomination was taken by the City Council, Gaunt declined to accept. Williams and Gay then suggested Foster A. Vineyard and the Council rejected.

In November a group of citizens, who seemingly were actuated by newspaper articles concerning management of the waterworks system, and inferences of maladministration, addressed a petition to the Mayor and

members of the Council, saying: "The peaceful and profitable career of the system is now halted by a demand by two of the governing board for a change in the administrative personnel of the board which has so successfully administered the system since its purchase."

Comment in the petition was that ". . . reasons advanced in justification of a change, as reflected by the press, are not, in the opinion of the public, wholly conclusive." There was the suggestion that the City Council hold a special meeting, to be attended by the three Commissioners "and all other persons who may have information on the subject," to the end that facts be ascertained.[1]

The City Clerk's minutes for November 22d show that a special meeting was held November 18th, and that the Council, resolving itself into a committee of the whole, referred the investigation to its Utilities Committee.[2]

Following instructions that charges of irregularities be inquired into, the Utilities Committee held its first meeting November 29th and took statements from witnesses. L. A. Jackson, operating manager of the Water Department, testified at length regarding Williams' use of ". . . a winch-type truck, with twenty-foot flat-bed trailer and Dodge Car No. 11." These were taken to Tall Timber Jersey Farm on the Hot Springs highway eight and a half miles from Little Rock. Accumulated use from February to August (1941) was 1,655 miles. August use of truck and car showed 640 miles, billed at .

[1] Acts of mismanagement mentioned in newspaper articles, as summarized by appellees (Mayor and City Council) were: (a) Use of instruments and equipment belonging to the Commission by unauthorized persons; (b) use by Williams of Commission trucks; (c) unauthorized use of war board priorities by M. L. Crist, engineer; (d) friction and lack of harmony between officers and employees; (e) use by Crist of commission office space while engaged in private activities; (f) ineligibility of Williams as a member of the Commission because he was not a *bona fide* resident of Little Rock. [In fixing qualification of commissioners, § 10019 of Pope's Digest requires that they be ". . . three citizens who are qualified electors of the municipality"].

[2] No minutes of the actions of the committee of the whole were kept; hence records are not available.

$71.50. Williams deducted $17.50 for gasoline and oil he furnished, and paid the difference of $54. No bill was rendered for automobile from February to June, inclusive.[3] Other uses occurred in September, 1941, and March, 1943.

Jackson further testified that the Water Department extended its lines 3,150 feet to serve Williams' dairy, at an estimated outlay of $1,936.44. One-sixth of this sum was guaranteed by Williams, payable in annual installments of $22.74 for fifteen years.[4]

Appellant made a brief statement to the Utilities Committee. Its report to the Council was presented December 13th, with motion for adoption. Effect would have been to exonerate all of those against whom accusations had been made. On substitute motion the report was filed.

November 20, 1943, Williams wrote each member of the Council, asserting that since 1906 he had lived in Little Rock, either at 2118 Louisiana, 2114 Spring, 1855 Cross, or No. 2 Armistead Road, ". . . and now at 515 West 24th Street." Referring to the Twenty-fourth Street address, he said: "My wife and I own this home and the furnishings in it. The house and the household goods are assessed in my name, and I have taken homestead exemption on it. All the utilities except the telephone are in my name, and this is our family home and legal residence, even though we are temporarily living on

---

[3] Although the statement is made that February-June use was not billed, it is not expressly stated that payment was not made without formality of a bill. [Other use of equipment was shown; also use by the water department of a tractor owned by Williams.]

[4] Williams executed bond for $2,000 to guarantee his payments. The written contract between Williams and "City of Little Rock, acting by and through the Board of Waterworks Commissioners," provided that if other consumers should be served from the extension line, Williams would receive fifty per cent of the revenues in excess of the guaranteed income. For the first nine months of 1941 revenue exceeded the guarantee by $85. The 1942 excess was $120.60. Jackson testified: "There is nothing irregular about this contract, and it was approved by the Board." [The copy appearing in the record of this appeal does not show approval. It is signed: "City of Little Rock. Little Rock Municipal Water Works. L. A. Jackson, Manager. . . Tall Timber Jersey Farm, the Applicant. By Wm. H. Williams, Owner:"]

our farm on Nineteenth Street Pike. Three of our four children attend Rightsell School in this neighborhood."[5]

A transcript of testimony before the Utilities Committee was available to the Council.

February 21st of this year the Council, without further notice, adopted its resolution No. 1655, "Ordering the removal of W. H. Williams as a member of the Waterworks Commission."[6]

Section 1 of the resolution recites that removal is "for cause." There is nothing to indicate what particular offense was sufficient, in the Council's judgment, to warrant removal. However, the minutes for November 22d show that a resolution was proposed ". . . to fix a time for the City Council to determine the qualifi-

[5] As a witness in Circuit Court Williams conceded that he knew a resolution questioning his eligibility was pending before the City Council. Referring further to his residence, this statement was made: "I am living at 515 West Twenty-Fourth Street. My wife and I own Tall Timber Jersey Farm. . . We have about four hundred acres in all. . . We began acquiring this property in 1935 or early 1936. We operate a dairy farm in the fullest sense of the word and retail our products in Little Rock. We have approximately 100 head of registered Jersey cattle. The farm is managed by a full-time employe. I tell him what I want and try to see that he does it. All of my mail comes to 401 Hall Building, Little Rock. All checks and correspondence for Tall Timber Jersey Farm are delivered at the farm, Route Three, Little Rock. . . I am living at Tall Timber Dairy Farm and spent last night there. In the past month I do not know how many nights were spent at Tall Timber Jersey Farm, but I would say by far the majority. This is also true of my family. We have a telephone at the farm listed in my name. I do not have a residence telephone listed in my name in Little Rock. . . My residence on Armistead Road was sold in October, 1942, . . . [but] we moved to Tall Timber Jersey Farm in June, 1942. The other property was sold after we moved. At the present time I have one sister and her son living at 515 West Twenty-Fourth Street. . . They have lived there approximately four years. . . I consider our home at the farm a temporary home, and with that full knowledge we established 515 West Twenty-Fourth Street as our legal residence. . ."

[6] "Whereas, the City Council has determined that it is to the best interest of the City of Little Rock and its Water Department that W. H. Williams be removed as a member of the Board of the Waterworks Commission; now, therefore, be it resolved by the City Council of the City of Little Rock, Arkansas: Section 1. That W. H. Williams be and he is hereby, for cause, removed as a Commissioner of the Waterworks Commission for the City of Little Rock. Section 2. Be it further resolved that copies of this resolution be forwarded to W. H. Williams and to the remaining Waterworks Commissioners, T. J. Gay and Dan M. Boone, in order to notify them of the removal of the said W. H. Williams as such Commissioner."

cations of W. H. Williams to continue to serve as a member of the Waterworks Commission."

By certiorari action of the Council and records pertaining to the investigation were brought to Circuit Court, where additional testimony affecting merits of the controversy was adduced. At conclusion of the hearing the court found that the council, in removing Williams, acted legislatively, and the resolution could not be made the subject of review by the method adopted, nor could the dismissal be questioned otherwise. This appeal challenges correctness of that finding.

Appellant contends that the holding in *McAllister* v. *McAllister*, 200 Ark. 171, 138 S. W. 2d 1040, is wrong if, as the judge who passed on Williams' petition for certiorari thought, it is authority for the proposition that where a statute fixes a definite term, still, if power is given (as in the instant case, Pope's Digest, § 10021) to remove "*for cause*," the Council may determine in its own way and upon any proof it thinks sufficient that a cause does exist, and then, without saying *what* the cause is, declare the office vacant.

It must be conceded that there is language in the McAllister opinion which, when segregated from the entire text, indicates a holding that the Council could have acted only in a legislative capacity. Indeed, there is the declaration that ". . . when the [City Council of Fayetteville] enacted the resolution [dismissing three Civil Service Commissioners] it was acting in a legislative capacity as distinguished from judicial or quasi-judicial." But when the full opinion is studied it can be seen that the intent was to say that in passing the particular resolution in question the action was legislative in its nature. Many of our cases hold that an administrative body or board, in considering charges against officers it may dismiss, acts in a *quasi*-judicial capacity in exercising the power.

In the McAllister case, discussing whether the ousted Fayetteville Commissioners were entitled to a writ of certiorari to review the Council's actions, it was said that

the appellants insisted upon this relief as a matter of right because the attempted removal—that is, passage of the resolution—was judicial or *quasi*-judicial, and that it was not accomplished in the performance of a legislative, executive, or administrative duty. It was then said:

"Should we conclude that this act . . . was purely legislative, then we must affirm the action of the trial court in denying the writ, and all other questions pass out of the case."

Two acts of the Fayetteville City Council were involved. By ordinance the offices of Chief of Police, and Chief of the Fire Department, were abolished. By resolution the Civil Service Commissioners were removed.

This court's opinion is inexact in that it seemingly anchored final result upon a strictly legal construction of the Council's power, and upon effect to be given a resolution duly adopted where, on the face of the resolution, statutory requirements, *prima facie,* were complied with.

Certainly a City Council, when passing an ordinance or adopting a resolution conformable to law, acts legislatively; but even so, it does not follow that a person whose official status has been created by law (subject *only* to removal for cause) may be denied judicial review of the Council's right to pass a particular measure merely because, when adopting a resolution, it has legislative powers. If action may be taken only in certain circumstances (as is the case with a City Council to which authority is delegated) it necessarily follows that the power to act in respect of the matter immediately in hand must be found in the law higher than mere will of the Council. Although the process or method by which an end is sought to be achieved—whether resolution or ordinance—is legislative in its nature, authority to attain the result must have been expressly conferred, or it must be necessarily implied, or it must be indispensable to declared objects and purposes of the corporation. *Willis v. City of Fort Smith,* 121 Ark. 606, 182 S. W. 275; *Cum-*

*nock* v. *City of Little Rock,* 154 Ark. 471, 243 S. W. 57, 25 A. L. R. 608; *Nesler* v. *City of Paragould,* 187 Ark. 177, 58 S. W. 2d 677.

In the case at bar the Council was empowered to remove a Commissioner *for cause.* Admittedly, if the City's governing body possessed general legislative powers and not delegated authority, its motives or reasons could not be inquired into, and a mere allegation that cause existed would close the door against inquiry.

In the Fayetteville case the resolution alleged certain neglect of duty by the Commissioners—such as failure, for a period of four years, to designate a Chief of Police, refusal to properly supervise the fire department, holding of dual offices by one of the commissioners, ineligibility, etc. The Council, having the right to remove for cause, stated its cause, and as the opinion says, proceeded to act.

The case at bar presents no such record. It is not enough, in the affirmative language of a resolution, to throw a cloak of anonymity over the cause and arbitrarily assert that cause exists. By this statement it is not meant that the Little Rock Council acted arbitrarily in removing Williams. On the contrary there was evidence of misconduct which if believed by two-thirds of the Council, and if alleged and acted upon, would have supported its findings. But we do not know, except by inference, that dismissal was predicted upon any of the causes as to which testimony was given. It may have been that purely personal dislike, or incompatibility not associated with official duties, animated the final result. If this were the basis of removal there was no cause within the meaning of the statute.

There were at least three charges expressed or to be inferred, either of which, if proved to the satisfaction of two-thirds of the Council, would have sustained an action of removal; but it was essential that they be particularized, that Williams be reasonably notified of a hearing, and that the testimony be made available to the accused in circumstances permitting a denial or explanation. If

this procedure had been followed prior to adoption of a resolution of removal which stated the cause, and if on appeal Circuit Court had affirmed, this court would decline on that record to say that error had prejudiced appellant's rights.

It is not putting form before substance when the law is construed to mean that in a transaction of this nature the Council must state the cause, give notice, and allow a defense. These are substantial rights. They are in the nature of conditions precedent to the Council's exercise of power. Impairment of these rights is not mitigated by the fact that in Circuit Court evidence sufficient to sustain removal was heard. The Council, in the first instance, determines sufficiency of the evidence, while Circuit Court examines the record to determine if such evidence was sufficient as a matter of law.

For the reasons expressed, it cannot be said that because there is substance we should affirm the decision. The contention is no more persuasive in the interest of *justice by expediency* than would be a demand that we affirm a criminal conviction where the evidence is conclusive of guilt, but the defendant was not present when tried on an information or indictment that did not specify the crime, and the defendant did not know when court would meet.

Our case of *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041, is cited by appellant, coupled with the statement that it is in hopeless conflict with the McAllister decision, that it had not been overruled, qualified, or impaired until the McAllister opinion was handed down, and that it was "simply ignored or overlooked."

The contention is untenable. The statute applicable when action of the Board of Control for Charitable Institutions of the State in removing Dr. Bledsoe was upheld provided that in case of removal of the secretary, superintendent, or steward for inattention, neglect, misconduct, or inefficiency in the discharge of his duties, or for other adequate cause, the Board should state specifically

and distinctly the ground therefor. It was held that the Board acted *quasi*-judicially, and that certiorari was available as means of review; also that if the Board had acted without any evidence, or contrary to any reasonable view of the evidence, its action would be reviewable by the Circuit Court. But the record before the Board (Mr. Justice HART dissenting and Mr. Justice HUMPHREYS concurring in the opinion of the majority) was the only evidence Circuit Court could consider, although testimony might be heard to determine what evidence was before the Board; nor may "an *ex post facto* showing of grounds warranting the removal of a public officer" cure a failure to give the necessary notice or hearing. American Jurisprudence, v. 43, § 212, p. 52.

In *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667, it was held that when an officer does not hold at pleasure, but retains his position during good behavior, subject to removal for specified causes, there must be notice and a hearing, and "He can only be removed from that office for the causes specified in the statute authorizing the Board to remove him." See *Tappan* v. *Helena Federal Savings & Loan Assn.,* 193 Ark. 1023, 104 S. W. 2d 458.

McQuillin, Municipal Corporations, (2d ed., § 575) states the law to be that where power of removal is conferred and the procedure is not specified, "there exists an implied requirement of proper notice to the officer of the charges preferred, and a full opportunity for him to be heard. . . Where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused."

Cases cited in American Jurisprudence, v. 37, § 241, p. 869, are to the effect that even in the absence of express provision in the statute, "it is well settled by the weight of authority that a municipal officer who has under the law a fixed term of office, and who is removable only for definite and specified causes, cannot be removed without notice of the charges against him and an opportunity to make defense to them, and the same is generally held to be true, in the absence of the positive mandate of statute,

where a municipal officer is elected or appointed for a fixed term, and provision is made generally for his removal for cause.''

In *Carswell* v. *Hammock,* 127 Ark. 110, 191 S. W. 935, the Cleburne Circuit Court was called upon to review, by certiorari, action of the Incorporated Town of Heber Springs, by its Council, in considering charges of misconduct preferred against commissioners-of a waterworks improvement district, and a street improvement district. Under an Act of the General Assembly, as in the case at bar, the Council had authority to remove for cause, and after a hearing, and upon due notice. The opinion quotes from *State ex rel. Hart et al.* v. *Common Council of the City of Duluth et al.,* 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595, where it was said:

'' 'Cause,' or 'sufficient cause,' means 'legal cause,' and not any cause which the Council may think sufficient. The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.'' And in Corpus Juris, v. 43, § 1085, p. 658, the term ''for cause,'' is said to mean *just* cause: ——''And the cause assigned for removal must not be a mere whim or subterfuge, but must be of substance relating to the character, neglect of duty, or fitness of the person removed.''

In the very nature of human activities it would be difficult for the General Assembly to enumerate all of the acts of a public official which might constitute cause for removal. The term, therefore, must have been used to mean any act of commission or omission that, considered in its relation to the duty involved, would stamp the person in question as unfit to occupy the position—one whose conduct became inimicable to the public welfare. One against whom such charges have been preferred—or concerning whom the implication of misconduct arises by reason of the allegation of ''cause''—is entitled to be heard in defense of the specific matter to which an investigation may be directed.

In the light of these general principles, what is the situation regarding appellant?

Additional testimony was heard in Circuit Court—evidence not previously before the Council. Conceding its sufficiency as "cause," the fact remains that on certiorari the trial court has authority to determine but one question: Did the Council have power, *at the time it acted,* and in the light of all testimony before it, to adopt the resolution of dismissal?

Our view is that it did not have such power. Even if it should be conceded that Williams knew what the charges were, and if it be further conceded that action of the Council when it resolved itself into a committee of the whole was tantamount to action of the Council, still the charges were in a sense "pigeon-holed" and the accused Commissioner had a right to assume the matter had been dropped, or that he would be notified before further action would be taken.

Appellant, in Circuit Court, asked for four declarations of law: (a) That the Council acted judicially; (b) that Williams could be removed only for cause, and the resolution neither recited nor found legal grounds to sustain the action; (c) that Williams was a citizen and qualified elector of Little Rock, and (d) the resolution was void.

What has been said disposes of all matters except (c) the requested finding, as a matter of law, that Williams was a citizen and qualified elector of Little Rock.

Whether Williams had moved from the City was a matter for the Council to determine. The holding in *Hillman* v. *Hillman,* 200 Ark. 340, 138 S. W. 2d 1051, was that in considering evidence relating to one's intentions to become a citizen of a particular place, and in weighing its sufficiency, it is necessary to look behind mere physical action and to appraise human behavior. In other words, evidence of intent is largely controlling, but circumstances may belie protestations of purpose; and the examining body is not required to believe claims of intent when circumstances point to a contrary conclusion.

452

For failure of the Council to state the cause it regarded as sufficient to sustain removal, and because after an investigation had been made the Utility Commission's report was filed without action and subsequently revived without notice, judgment of the Circuit Court is reversed. The cause is remanded with directions to the Circuit Court to hold the resolution void, but without prejudice to the Council's right to reconsider the matter and to act in a manner not inconsistent with this opinion.