LAWRENCE v. JONES.

5-1552                                             313 S. W. 2d 228

Opinion delivered May 5, 1958.

[Rehearing denied June 9, 1958]

*John F. Gibson* and *Robert B. Gibson,* for appellant.

*Robert Smith, Don Clarke* and *Herschel H. Friday, Jr.,* for appellee.

J. SEABORN HOLT, Associate Justice. McGehee Sanitary Sewer District No. 1 was established in 1926, and bonds in the principal amount of $122,000 were issued to cover cost of construction and cost of maintenance.

In 1942 refunding bonds were issued and in 1953 the last bond was retired. In 1956 a formal release was filed by the trustee of the refunding issue and there is now no outstanding bond indebtedness of the District, and no levies have been made on the assessment of benefits since payment of the bonds. There appear to be some outstanding delinquencies on levies. The surplus on hand from collections, in the amount of $2,020.06, has been turned over to the city of McGehee for maintenance work on the sewer system. It seems undisputed that the district has never paid out any money for maintenance or upkeep of the sewer system, but all maintenance and upkeep has been paid by the city out of its general fund.

The present suit was filed by appellants, as a class suit, as property owners and taxpayers of *McGehee v. the Mayor, City Council, Members of the Sewer Committee and the Commissioner of the Sewer District* for an accounting and distribution of its funds and for a declaration of invalidity of two ordinances, Nos. 343 and 344.

A trial resulted in a decree in favor of appellees on all issues and this appeal followed. For reversal appellants rely on these points: "1. Only a property owner who owned property within the territory to be affected should have been allowed to vote in the election on Ordinances Nos. 343 and 344. 2. A difference should have been made between the rates to the users in the Sanitary Sewer District No. 1 (old district) and the users in the new additions. 3. That a proper accounting or audit of the affairs of Sanitary Sewer District Number 1 was not made as required by law." Ordinance 343 and 344 were passed by the city on January 18, 1957. Ordinance 343 was a rate ordinance and 344 was entitled "An ordinance providing for the construction of extensions, betterments and improvements to the sewer system of the City of McGehee . . ." Under the terms of Ordinance 344, there was included old Sewer District No. 1 and additional territory within the city limits, and authority to issue and sell $310,000 of sewer revenue bonds, which, added to government aid, would finance the cost of construction. Thereafter there was a referendum vote on these two ordinances. at which all qualified electors in the

city, whether property owners or not, were allowed to vote, and both ordinances were approved by a majority of more than two to one.

### 1.

On this point appellants claim that only property owners had a right to vote on the two ordinances in question. We do not agree. The record clearly shows that the city council of McGehee proceeded here under Act 132 of 1933 (Ark. Stats. 1947 Sec. 19-4101 *et seq.*, the Sewer Revenue Bond Statutes), and not, as appellants argue, under Act 131 of 1933. Ordinance 343, the rate ordinance (in Sec. 3) makes reference to Sec. 19-4113 Ark. Stats. (Act 132), and Ordinance 344, the bond ordinance, throughout its provisions several times, refers to Act 132, which provides for an additional and alternative method of constructing and maintaining sewer systems.

Appellants say: "The nature of the charges under Ordinances 343 and 344 of the City of McGehee is a tax which required the vote or consent of the majority of the property owners affected." This court had occasion to construe the provisions of Act 132 in the case of *Jernigan v. Harris,* 187 Ark. 705, 62 S. W. 2d 5, where we said: "By the provisions of Act 132 the cities and towns of the State are authorized to construct, own, equip, operate, maintain and improve sewage plants, and to authorize charges against the owners of real estate within such cities and towns for the use of same, and for the collection of such charges, and to authorize cities and towns to issue revenue bonds, payable solely from the revenues from such systems. Section 13 of Act 132 directs the city and town councils to pass ordinances 'to establish and maintain just and equitable rates or charges for the use of and the service rendered by such works, to be paid by each land owner whose premises are connected with, and use, such works by or through any part of the sewerage system of the city or town, or whose premises in any way use, or are served by, such works . . .' The liens which may arise under Act 132, and which may be

enforced pursuant to its authority, are not taxes within a strict definition of that word, but they are of that nature. More properly, they are burdens imposed pursuant to the exercise of the police power, to and for the validity of which the consent of the property owner is not essential. It is a burden imposed *pro bono publico.*"

In a later case, *Carpenter* v. *City of Paragould,* 198 Ark. 454, 128 S. W. 2d 980, wherein this court had for consideration the question whether the action of a city council in enacting sewer ordinances, under Act 132, was legislative and therefore subject to a referendum and the vote of all the electorate. of the city under Amendment 7 of our State Constitution, or only administrative and not subject to referendum, we there held that the action of the city in passing the ordinances was distinctly legislative and subject to a vote of all the electorate. The opinion recites: "Appellees here are proceeding under authority of Act 132 of 1933, now Secs. 9977-9990 Pope's Digest. The act provides the manner in which sewer projects may be constructed pursuant to ordinances passed by the city council. The improvement proposed originated in the city council itself. No petition is a condition precedent to action on the part of the city council. The action of the city council in the instant case, in enacting the ordinance and resolution in question is distinctly legislative, and not the exercise of a mere ministerial function. The council is not acting in an administrative capacity as would be the case where a municipal improvement district is created pursuant to a petition of a majority of the property owners affected in that district . . . It will thus be noted that the right of referendum is granted to the people on legislation of every character, whether the legislation affects all or a part of the citizens of the municipality affected."

2.

On this point appellants contend, in effect, that Ordinance 343 (the rate ordinance) was void because the city council did not charge the users of the sewer system situated within the boundaries of the old district (Dis-

trict 1) less than they charged users outside those boundaries. We do not agree. Again we must point out that we are here concerned with a sewer system to be financed and maintained with revenue bonds as provided in Act 132 of 1933. Section 13 of Act 132 (Ark. Stats. 19-4113) contains this language: "The council of the city or town shall have power, and it shall be its duty, by ordinance to establish and maintain just and equitable rates or charges for the use of and the service rendered by such works, to be paid by each landowner whose premises are connected with, and use, such works by or through any part of the sewerage system of the city or town, or whose premises in any way use or are served by, such works; . . ." Complying with this provision the city council in Ordinance 343 fixed the rates to be charged based on water consumption, which the trial court summarized as follows: "All customers are classified as either domestic or commercial. In the case of domestic customers the average monthly water consumption for the months of January, February, March, October, November and December of the calendar year preceding that in which bills are rendered is computed for each customer and a uniform monthly charge determined by applying the schedule of rates to the average monthly usage. In the case of commercial customers the average monthly water consumption for the preceding calendar year is computed for each customer and the schedule of rates is applied thereto except that in the case of commercial customers using an appreciable percentage of water in such a manner that it does not reach the sewer the sewer committee is directed to determine the water usage that does reach the sewer system and the schedule of rates is applied thereto. The schedule of rates runs from 60 cents per 1,000 gallons for the first 2,000 gallons to 12 cents per 1,000 gallons for all above 100,000 gallons, with the minimum monthly charge being $1.75. In addition, among other things, the ordinance provides that under the provisions of Ark. Stats. 19-4113 a lien is fixed upon the land for any unpaid sewer service charge."

Rate making being a legislative act, unless the city council has acted arbitrarily and unreasonably in fixing these rates, there is a *prima facie* presumption in favor of their correctness, and the burden is on complainant to show otherwise. "On the question of the reasonableness of rates fixed by the Corporation Commission for the transportation of gas by a pipe line company, there is a *prima facie* presumption in favor of such rates. The same presumption exists in favor of rates fixed by an ordinance," *Camden Gas Corp.* v. *Camden,* 184 Ark. 34, 41 S. W. 2d 979; and "The burden of proving the city's rate schedule to be arbitrary and unreasonable rested upon the plaintiffs, for the ordinance is entitled to the presumption of validity that legislative enactments ordinarily receive," *Delony* v. *Rucker,* 227 Ark. 869, 302 S. W. 2d 287.

After consideration of the record presented, we hold that this rate ordinance is not discriminatory because it did not charge users in the old district (No. 1) less than those outside, and further, that appellants have not shown any arbitrariness on the part of the city council.

### 3.

Finally, appellants contend that there had not been a proper audit and accounting of the affairs of the District No. 1 as required in Sec. 20-228 Ark. Stats. 1947, and no proper distribution of those funds had been made. We do not agree.

The facts showed that from the establishment of District No. 1 in 1926 the city clerk had been the collector for the district, had all of the tax records together with receipt books and had deposited all collections, less a collection fee, in a McGehee bank. Mr. Faye Joyner, a former commissioner, testified that he and the attorney for the district filed a report showing all outstanding delinquencies as of September 4, 1956 and had turned over to the City of McGehee a total of $2,020.06. He further testified that a full report and accounting had been made for all money, bonds and coupons in 1931, 1937 and 1941. There is no charge or intimation, even, of any fraud or

misconduct by the sewer commissioners, or the city, in the handling of these funds. It is not denied that the city had been operating and maintaining the system out of its general revenues with no expense to the district. The sewer bonds were issued for the "purpose of constructing and maintaining a sanitary sewer system." The city has already spent far more than the $2,020.06 turned over to it in maintaining the system.

It was shown that it would cost more than the amount of money on hand ($2,020.06) in fact, approximately $2,500.00, to have an accounting for refund purposes. The principle of law announced in *City of Stuttgart* v. *McCuing*, 218 Ark. 34, 234 S. W. 2d 209, applies with equal force here. We there said: "From a practical viewpoint, since in all cases of refunds there must be necessary costs attached, such refunds would be subject to the burden of distribution. Obviously, in some instances where excess funds are to be dealt with, the overall cost of refunding might exceed the surplus, or it might be found that in respect of each taxpayer the rule *de minimis non curat lex* (the law cares not for small things) should apply. In such cases, where no taxpayer's claim could be regarded as substantial, no refunds would be required."

On the whole case, finding no error, the decree is affirmed.