Albert C. KRUZICH et al *v.* The
WEST MEMPHIS UTILITY COMMISSION

74-179                                    515 S.W. 2d 71

Opinion delivered November 4, 1974

*Nance, Nance & Fleming* and *Stephen K. Wood,* for
appellants.

*R. E. Wallin* and *Jake Brick,* for appellee.

J. FRED JONES, Justice. This is an appeal by Albert C.
Kruzich and other residents of West Memphis, Arkansas,
from a decree of the Crittenden County Chancery Court

denying their petition for a return of money they paid for fuel adjustment charges added to their electric bills, and denying their petition for a permanent injunction restraining the appellee, West Memphis Utility Commission, from collecting fuel cost adjustment charges for electric services. The question presented is primarily one of law stated by the appellants in the point they rely on as follows:

"The chancellor's holding, that although a schedule of rates for the several services furnished by the appellee was established by city ordinance, said rates may be amended by resolution of the city council to allow appellee to pass on to its consumers indefinite and increased operating expense, was contrary to the law and the evidence."

The facts appear as follows: Prior to 1954 the City of West Memphis purchased the privately owned electric power distribution system in West Memphis. In December, 1954, the appellee-defendant, West Memphis Utility Commission, was created by Municipal Ordinance No. 292 under authority of Act 562 of the Acts of 1953, Ark. Stat. Ann. §§ 19-4051 through 19-4060 (Repl. 1968). The utility rates in effect at the time of purchase were adopted under Ordinance No. 292 and were confirmed from time to time by additional ordinances in connection with bond issues.

The City of West Memphis purchases its electrical energy at wholesale from the privately owned Arkansas Power and Light Company and distributes the energy through its own distribution system to its local consumers. The last contract between the Arkansas Power and Light Company and the City of West Memphis was dated February 2, 1967, and was for a period of 20 years, with an automatic year to year extension clause in the absence of notice to the contrary. The contract between the city and AP&L provided that both the company and the city reserved the right to seek amendments as to increase or decrease in the rates and charges set forth in the contract in accordance with law, from any state or federal regulatory body having jurisdiction thereof; and further provided, that the charges and payments for electric service, required to be paid by the city under the agreement, should be made only from the gross

revenues of the city electric system as a necessary expense of its operation. The cost of electrical energy to the city increased from time to time and the city through the Commission absorbed the additional cost until September 20, 1973, when by Resolution No. 472 the city authorized the West Memphis Utility Commission to pass on to the consumer the fuel cost adjustment increases included in the cost of electric power from AP& L.

Only a portion of the original Ordinance No. 292 is exhibited in the record and it reads as follows:

"The board shall, with the approval and confirmation of the city council, make a schedule of rates for the several services and for the different classes of consumers, and shall make such rates for the service rendered as will enable them at all times to pay operating expenses, interest, sinking funds requirements, amortization payments, reserve for working capital, remunerations and replacements, casualties and other fixed charges, and in the event service is furnished consumers or users outside the city, the rates charged such persons shall not necessarily be as low as the rates charged within the city. The commission, by and with the approval and confirmation of the city council, shall have the right to change the schedule of rates for utilities in the city and outside the city from time to time as in their judgment may be necessary or proper. Any rates approved by the city council shall be sufficient to provide for payment of all bond maturities or other indebtedness issued against the utility or constituting a lien against the systems or the revenue therefrom, including reserves therefor and provide for all expenses of operation, and replacement and maintenance of the plants or systems."

That portion of Resolution No. 472 complained of by the appellants reads as follows:

"The City Council of the City of West Memphis authorizes fuel cost adjustment increases included in the cost of electrical power from Arkansas Power and Light Company to the West Memphis Utility Commission and/or the City of West Memphis be passed on to the

ultimate consumer on bills or statements from said Commission in direct proportion to the amount of power ultimately consumed by the respective customers of the West Memphis Utility Commission."

The appellants argue that since the original rate schedule was authorized by municipal *ordinance*, it cannot be changed by municipal *resolution*. The appellee argues that the fuel cost adjustment charges fluctuate from month to month and are not actually a change in rate schedule. It argues that the additional costs are of a temporary nature; that the approval and confirmation by the city council is in the nature of an administrative act and may be accomplished by resolution. The chancellor agreed with the appellee and we agree with the chancellor.

In McQuillin, Municipal Corporations, rev. vol. 5, § 15.01, is found the following statement:

"While the term 'ordinance' has been used in various senses, the term is generally used, in this country, to designate a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct, relating to the corporate affairs of the municipality."

In § 15.06 McQuillin says:

"The general rule is that where a charter commits the decision of a matter to the council or legislative body alone, and is silent as to the mode of its exercise, the decision may be evidenced by resolution."

And, at § 15.02 McQuillin distinguishes resolutions and ordinances as follows:

"A 'resolution' is not an 'ordinance,' and there is a distinction between the two terms as they are commonly used in charters. A resolution ordinarily denotes something less solemn or formal than, or not rising to the dignity of, an ordinance. The term 'ordinance' means something more than a mere verbal motion or

resolution, adopted, subsequently reduced to writing, and entered on the minutes and made a part of the record of the acting body. It must be invested, not necessarily literally, but substantially, with the formalities, solemnities, and characteristics of an ordinance, as distinguished from a simple motion or resolution.

A resolution in effect encompasses all actions of the municipal body other than ordinances. Whether the municipal body should do a particular thing by resolution or ordinance depends upon the forms to be observed in doing the thing and upon the proper construction of the charter. In this connection it may be observed that a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed. An ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality. Thus, it may be stated broadly that all acts that are done by a municipal corporation in its ministerial capacity and for a temporary purpose may be put in the form of resolutions, and that matters upon which the municipal corporation desires to legislate must be put in the form of ordinances."

See also Charles S. Rhyne, Municipal Law, § 9, at p. 226.

Act 562 of 1953, Ark. Stat. Ann. §§ 19-4051 through 19-4060 (Repl. 1968), is the charter authority for the creation and function of the appellee commission in this case. Section 19-4051 provides that a city of the first class may, by the enactment of an ordinance, create a commission to operate, control and supervise such of its municipally owned light plants as may be prescribed by an ordinance and which are not already being operated by a commission created by or pursuant to valid special or local acts of the Arkansas Legislature.

Section 19-4053 authorizes the city council, by proper ordinance, to create a body consisting of five members for the purpose of directing, managing and controlling the operation of the plants and directs the terms and manner of selecting the commissioners, and the manner for filling vacancies on the commission.

Section 19-4055 provides for the manner in which the board shall be organized and § 19-4056, pertaining to the powers of the board, reads as follows:

"Said board or boards created pursuant to the provisions of this act [§ 19-4051 — 19-4060] shall have the full power to operate and control the plant or plants entrusted to its direction by the city ordinance creating said board as provided in Section 1 [§ 19-4051] hereof and, subject to such *restrictions* as may be prescribed in the ordinance creating said board or boards, said board or boards shall have full power to buy and pay for out of the earnings or revenues of said plants for the welfare and benefit of the citizens and inhabitants of the Municipal Corporation, and may purchase and pay for out of the revenues derived from the operation of such power plants, all necessary equipment needed in the operation of such plants, for such lands as may be necessary and may also sell any property, real [or] personal, not necessary to be used in the operation of the plant or plants; but shall not sell or rent the right to own, use and operate the necessary equipment of such plant or plants." (Our emphasis).

Section 19-4057 provides that subject to such *restrictions* or *limitations* as may be imposed by municipal ordinances, the board or boards created pursuant to this act shall have plenary powers with reference to the selection, supervision and payment of compensation for all employees required in the operation of the plant provided:

"that nothing herein contained shall be construed to limit or impair the rights of the City Council to approve any rates or charges for electric, water or sewer service and provided further that any ordinance passed by the City Council may make additional provisions for the

control and operation of Light, Water or Sewer Plants, may provide a limitation as to salaries or wages to be paid by said Board including salaries to be paid to members of said Board for their services as members thereof."

This section then provides that unless otherwise limited or authorized by city ordinances, the salaries to be paid to the members of the board should be $10 a month or $5 for each meeting, whichever shall be the lesser sum.

It will be noted that this Act does not expressly authorize the commission to fix rates to be charged for electric services as does a later act, Act 115 of 1957, Ark. Stat. Ann. § 19-4061 through 19-4082 (Repl. 1968), pertaining to the creation of commissions for the operation of waterworks and distribution systems or electrical plants and systems where the city had owned and been operating same for a period of ten years; but in the 1953 Act, under which the appellee commission was created, § 19-4058 of the statute provides as follows:

"Except as its powers may be *limited* by city ordinance, the board shall have the same rights and powers with reference to the nature, extent and performance of its duties and with reference to the employment of employees and other necessary assistants as is now provided by law with reference to the Boards of Commissioners of Municipal Improvement Districts." (Our emphasis).

Of course, prior to the 1953 and 1957 Acts, cities of the first class were authorized to construct and operate plants and systems for the distribution of public utilities through boards of commissioners of municipal improvement districts and the powers of such commissioners, as referred to in § 19-4058, *supra*, are found in Ark. Stat. Ann. § 20-315 (Repl. 1968) as authorized by Act 242 of 1949, as follows:

" * * * As long as the Commissioners continue to operate such water and electric light districts they shall make an annual report to the City or Town Council showing in detail all receipts and disbursements made

by them; and as long as they continue such operation they shall have the right to fix the rates to be paid by consumers of water and electric light or power, and such rates shall be fixed as nearly as possible at amounts which will pay the bonds of the district [as they mature, so as to relieve the real property of the district] as far as possible from the burden of taxation therefor. From the rates fixed by the Board, any property owner may take an appeal to the circuit court of the county, which shall confirm or set aside said rates as it finds just, and if it sets aside rates fixed by the Board, it shall itself fix rates which will be reasonable and adequate for the purposes aforesaid."

We are of the opinion that when the city council of West Memphis enacted the initiatory Ordinance No. 292 in 1954, as authorized by Act 562 of 1953, the commission was invested by the statute with such authority therein conferred, subject only to "such restrictions as may be prescribed in the ordinance creating the board," as provided in § 19-4056, *supra*, and "except as its powers may be limited by city ordinances," as provided in § 19-4058, *supra*. The only limitation placed upon the administrative duties and authority of the board by Ordinance No. 292 was that the municipal council reserved the right to approve and confirm the rate schedule and any changes therein by the commission.

The powers thus conferred upon the commission were derived directly from the Legislature and subject only to such restrictions the municipal council might impose by ordinance. The only restriction the city council saw fit to place on the commission was that in exercising its powers conferred by the Legislature, the commission do so with the "approval and confirmation" of the city council. The statute does not provide for or direct the manner in which the city council must approve and confirm the actions of the commission pertaining to rates or changes therein. In fact, the legislative Act does not require that the action of the commission in this area be approved or confirmed at all.

We are of the opinion, therefore, that the rights to approve and confirm thus reserved in Ordinance 292 pertained to the administrative functions of the commission under

authority granted by the Legislature and the right to approve and confirm, as reserved in the ordinance, was simply a restriction placed on the administrative rights and duties of the commission as from time to time performed by it. We conclude that such approval and confirmation were legally expressed in this case by resolution and did not require the more solemn, formal and permanent form of a municipal ordinance.

The decree is affirmed.

BYRD, J., dissents.