78-120. CITY OF NORTH LITTLE ROCK,
Eddie POWELL, Individually, and as
Mayor et al *v.* John M. GORMAN
et al

78-131. R. E. BRUCE *v.* Eddie POWELL,
Mayor of the City of North
Little Rock et al

78-120 & 78-131                    568 S.W. 2d 481

Opinion delivered July 17, 1978
(In Banc)

78-120. *Jim Hamilton,* North Little Rock City. Atty., and *Spitzberg, Mitchell & Hays,* by: *Kent Foster* and *Theodore C. Skokos,* for appellants.

78-120. *Charles L. Carpenter* and *Charles L. Carpenter, Jr.,* for appellees/intervenors.

78-120. *Morgan E. Welch,* for appellees.

78-131. *Charles L. Carpenter* and *Charles L. Carpenter, Jr.,* for appellant.

78-131. *Jim Hamilton,* North Little Rock City Atty., for appellees.

GEORGE HOWARD, JR., Justice. These two appeals have been consolidated for final disposition in this opinion; case number 78-120 is from the Pulaski County Chancery Court, Second Division, while case number 78-131 is from the Pulaski County Circuit Court, Second Division.

The central issue in both cases is whether Ordinance Number 4835, which was passed by the North Little Rock City Council on December 27, 1977, which increased rates for electricity sold by the City is a legislative measure or an administrative one. If the former, the ordinance would have to be referred to the voters of North Little Rock, as requested by a written petition, pursuant to Amendment 7 of the Arkansas Constitution, and if the latter, then such measure would not be subject to referendum.

A secondary issue involved is which court, the Chancery Court of Pulaski County or the Circuit Court of Pulaski County, has jurisdiction to resolve the dispute.

The pertinent facts for an understanding of the dispute, which contain all of the necessary ingredients that, indeed, characterize this controversy as one of public interest, and for a resolution of the issues before us are:

On May 9, 1977, the North Little Rock City Council enacted Ordinance Number 4755 creating the North Little Rock Electric Commission, which, among other things, conferred on the Commission "absolute powers with reference to" electrical power purchases, management, improvements, extensions and maintenance of the City-owned electric distribution system.[1] However, Section 8 of the Ordinance contains the following reservation:

> "*Rate Making:* Nothing contained herein shall be construed as a removal from or abdication by the City Council of the City of North Little Rock from *its sole responsibility of adopting ordnances establishing rate schedules for customer classes of the North Little Rock Electric Department* . . . . " (Emphasis added)

On July 2, 1977, the Federal Power Commission approved an increase in rates for wholesale power sold by Arkansas Power and Light Company to the City of North Little Rock in the amount of $1.8 million annually. In order to collect these charges, the Commission recommended increases in electric rates to the City Council which the Council adopted by Ordinance Number 4798 entitled "An Ordinance establishing rates for electricity sold by the City . . . Providing for general fund transfers[2] . . . " on July 25, 1977. Subsequently to the enactment of Ordinance Number 4798, petitions were filed with the City Clerk requesting a referen-

---

[1]Act 740 of 1977 of the General Assembly of the State of Arkansas, authorizes the management of the North Little Rock Electric Department by Commission created by the City Council.

[2]It is clear from the record before us that the electric rates increase as evidenced by Ordinance Number 4798 were designated to offset the increase of $1.8 million in the annual charges for power purchased from Arkansas Power and Light Company in order to maintain a transfer of funds from electric revenues to the general fund of the City of North Little Rock, amounting to $2.1 million for the current budget. The funds transferred from the electric revenues are characterized as surplus, stated differently, part of the net profit derived from electric revenues and used to pay salaries of firemen, policemen, and in the maintenance of the park system and other departments of the City. It is further clear that this has been a practice followed by the City for many years. For example, the following sums, for the years designated, represent the net profit derived from electric revenues and transferred to the City's general fund: 1975 — $2,535,000; 1976 — $2,365,000; and 1977 — $2,025,000.

dum on Ordinance Number 4798. The special election which was held on November 15, 1977, resulted in the rejection by the voters of North Little Rock of the ordinance and the electric rate increase therein.

On December 27, 1977,[3] the City Council again adopted Ordinance Number 4835 which set rates for electric services which were designed to collect the increase in the wholesale rates charged by Arkansas Power and Light Company. Subsequent to the action of the City Council, the City Clerk of the City of North Little Rock received, on January 24, 1978, a petition containing the signatures of more than 2,000 electors seeking to have Ordinance Number 4835 referred to the voters. On January 30, 1978, the City Clerk certified the petition as being sufficient.

On February 3, 1978, a class action was filed in the Chancery Court of Pulaski County praying, among other things, that the City of North Little Rock, the Mayor and Council be enjoined from making use of the funds collected pursuant to Ordinance Number 4835 until such time as a referendum is held pursuant to petitions filed with the Clerk requesting the Council to call a special election; that the Mayor and City Council be ordered to proceed "forthwith with a time certain for the referendum of Ordinance Number 4835."

On February 7, 1978, a petition to intervene was filed in the Chancery Court proceeding by Don Gilbert, Charles M. Polk, B. R. Johnson, J. W. Springer, John L. Garner, J. R. Matchett, Gene Carr and Jimmy L. Tanner, uniform employees of the City of North Little Rock, requesting, among other things, that the Chancery Court enjoin and restrain the Mayor and City Council of North Little Rock from referring Ordinance Number 4835 to the voters for approval or rejection pending a determination of the issues by the court; and for an order of the court finding that Ordinance Number 4835 was an exercise of an administrative function as opposed to an exercise of its legislative authority.

[3]After the voters of North Little Rock defeated Ordinance Number 4798 on November 15, 1977, the City Council, on November 21, 1977, readopted the prior electric rates in existence before the Council adopted Ordinance Number 4798 by reenacting Ordinance Number 4693.

On April 7, 1978, the Chancery Court of Pulaski County held that Ordinance Number 4835 is legislative in nature and that it produces revenue, separate and apart, "from the needs for operation of the electrical department in its complete operation; such aspect of Ordinance Number 4835 is in effect taxation and Ordinance Number 4835 should be submitted by referendum to the people." The chancery court concluded:

"IT IS, THEREFORE, BY THE COURT, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the defendants, Eddie Powell, Art Eastham, John Whalen, John Ward, Travis Hardwick, W. B. Hudson, Charles Gassaway, Joe Anousakes and Mary Hess should be, and they are hereby, directed to call an election and refer North Little Rock City Ordinance Number 4835 to the people."

Relative to case number 78-131 on appeal from the Pulaski Circuit Court, appellant, R. E. Bruce, filed his complaint in the Circuit Court of Pulaski County on April 20, 1978, seeking an order, a writ of mandamus, requiring the Mayor and City Council of North Little Rock to submit Ordinance Number 4835 to the voters for acceptance or rejection "without further delay."

After the issues were duly joined, the Circuit Court found that the Pulaski County Chancery Court had held that Ordinance Number 4835 was a proper "subject for referendum" and that the chancery case was being appealed to the Arkansas Supreme Court, and therefore, until the Supreme Court acts, "there is no certainty that an election will, in fact, be required." The Circuit Court concluded by stating:

". . . [T]he plaintiff's request for relief should not be granted at this time, however, in the event the Chancery Court's ruling is affirmed, the City of North Little Rock should be prepared to immediately set the election to be held within a reasonably prompt period of time."

# THE DECISION

## I.

### *THE CHANCERY COURT PROCEEDINGS*

The appeal from the Pulaski Chancery Court, case number 78-120, may be quickly and summarily disposed of on jurisdictional grounds. For it is well settled that chancery courts in this State have jurisdiction only to review the action of a county or city clerk in determining the sufficiency of local petitions for initiative or referendum under and pursuant to Amendment Number 7 to the Arkansas Constitution. *See: Rich v. Walker,* 237 Ark. 586, 374 S.W. 2d 476. Sufficiency of the petition requesting the officials of North Little Rock to refer Ordinance Number 4835 to the people to be voted on was never challenged. Moreover, it was stipulated between the parties that the City Clerk certified that the petition was sufficient. Thus, the Chancery Court was without jurisdiction to entertain this action which involved essentially political rights as distinguished from property rights. The vindication of one's political rights must be sought in a court of law, namely, the circuit court. *Catlett, et al v. The Republican Party of Arkansas, et al,* 242 Ark. 283, 414 S.W. 2d 651 (1967).

We perceive, from the record before us, that counsel for the Mayor and Council and counsel for plaintiffs, as indicated in the amended complaint, recognized the jurisdictional problem, but sought to confer jurisdictional status on the chancery court by asking the chancery court to declare the rights of the parties under our declaratory judgment provision.[4] However, it is clear that courts of equity do not have jurisdiction to render declaratory judgments where, as here, the subject matter is not cognizable in a court of equity. Moreover, the parties may not waive the jurisdictional defect where there is no predicate or basis for equitable jurisdiction.

---

[4]See: Ark. Stat. Ann. § 34-2501 which provides: "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect: and such declarations shall have the force and effect of a final judgment or decree."

*Catlett, et al* v. *The Republican Party of Arkansas, et al,* supra; *Sheffield* v. *Heslep,* 206 Ark. 605, 177 S.W. 2d 412 (1944); *Jackson* v. *Smith,* 236 Ark. 419, 366 S.W. 2d 278 (1963).

Finally, in *Nethercutt* v. *Pulaski County Special School District,* 248 Ark. 143, 450 S.W. 2d 777 (1970), we emphasized that mandamus is a common law writ for a remedy at law which was unknown to equity procedure and, therefore, is designed to enforce legal rights and thus, is for all practical purposes a procedure at law.

We, accordingly, reverse and dismiss the Pulaski County Chancery Court action for want of jurisdiction.

## II.

### *THE CIRCUIT COURT PROCEEDINGS*

Amendment 7 to the Arkansas Constitution, in relevant part, provides:

". . . [R]eferendum powers of the people are hereby further reserved to the local voters of each municipality and county as to all local, special and *municipal legislation of every character in and for their respective municipalities . . .* " (Emphasis supplied)

In *Scroggins* v. *Kerr,* 217 Ark. 137, 228 S.W. 2d 995 (1950), we made the following observation:

"Not all ordinances enacted by City Councils come under the head of 'municipal legislation.' City governments in Arkansas know no such complete separation of powers as would automatically classify all aldermanic activities as legislative in character."

It is well settled that the test resorted to in determining whether any bill, law, resolution or ordinance is legislative or administrative is to determine whether the proposition is one that makes new law or to execute a law already in existence. The power or authority to be exercised is legislative in its nature if it prescribes a new policy or plan; while on the other

hand, it is administrative in its nature if it simply pursues a plan already adopted by the legislative body, in the instant case, the City Council of North Little Rock. *See: Scroggins* v. *Kerr,* supra; *Greenlee, et al* v. *Munn, Clerk, et al,* 262 Ark. 663 (1978).

The pivotal question that immediately confronts us is: Does Ordinance Number 4835 prescribe a new law, policy or plan: or is it one that executes a law or plan already in existence?

The City of North Little Rock, the Mayor and Council argue that the history of rate-making authority by the City of North Little Rock dictates a finding that Ordinance Number 4835 is administrative in nature and, therefore, is not subject to the referendum provisions of the Constitution.

In support of this argument, appellees contend that the Arkansas General Assembly gave to cities the authority to own and operate electric distribution systems and establish rates for electric service under Ark. Stat. Ann. § 19-2318; that Act 740 of 1977 authorized the City to establish a commission for the management of its electric system and pursuant to this authority, the Council, on May 9, 1977, adopted Ordinance Number 4755 which created the North Little Rock Electric Commission and reserved to the Council the authority to set rates as recommended by the Commission and allocate such funds to the North Little Rock General Fund as the Council deemed appropriate; thus, the adoption of Ordinance Number 4835 by the Council was merely the administration by the Council of Ark. Stat. Ann. § 19-2318, Act 740 of 1977 and Ordinance Number 4755.

While appellees' argument is interesting and at first blush seems plausible, we are not persuaded that this argument comes to grips with an element contained in the rate making process that clearly and unequivocally makes Ordinance Number 4835 legislative as opposed to administrative.

First, the Council expressly reserved the power in Ordinance Number 4835 to enact ordinances establishing rate

schedules for electric service; and, secondly, Ordinance Number 4835 was enacted for the expressed purpose of producing revenue for the City's General Fund as opposed to generating funds for the operation of the electric department. Moreover, it has been conceded by the parties to this action that the rate increase proposed under Ordinance Number 4835 is designed to benefit the City's General Fund. Under these circumstances, the people of North Little Rock having duly complied with the constitutional provisions for referring Ordinance Number 4835 to a vote, the people of North Little Rock should be afforded an opportunity to voice their approval or disapproval of the proposition.

We conclude that appellant, R. E. Bruce, was entitled to the relief requested, namely, a writ of mandamus directed to the North Little Rock City officials requiring them to schedule an election without undue delay relative to Ordinance Number 4835. It must be remembered that the City Clerk certified the petition filed for a referendum as being sufficient on January 30, 1978, and appellant's complaint was filed approximately fourteen weeks later. *See: Lewis* v. *Conlee,* 258 Ark. 715, 529 S.W. 2d 132 (1975).

The only function remaining to be performed in connection with the petition for a referendum is the Council's duty to call the election which is clearly a ministerial responsibility. It is well settled that a failure to perform a ministerial duty is enforcible by a writ of mandamus. *Wright* v. *Ward,* 170 Ark. 464, 280 S.W. 369 (1926).

Reversed and remanded.

HICKMAN, J., not participating.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur because of the narrow grounds on which the opinion is based, i.e., (1) the fact that the North Little Rock City Council retained for itself the sole responsibility for rate making when it turned the operation of the electrical distribution system over to an independent commission, as authorized by statute;

and (2) the fact that it is conceded that a major objective in the rate making ordinance was to insure a definite surplus or profit for definite municipal purposes. This is also reflected in the ordinance creating the commission by the provisions for the council filing documents evidencing the revenues necessary for general municipal purposes and for the council's authority to make charges for allocation to the city's general fund take any form it chooses.

Rate making for a franchised utility has always been considered to be a legislative function. *Lawrence* v. *Jones,* 228 Ark. 1136, 313 S.W. 2d 228. There is really little difference in rate making for a municipally owned utility operated by an independent commission. When the council fixes rates for that commission, not as "just compensation" as provided by Ark. Stat. Ann. § 19-2318 (Repl. 1968) but for established municipal purposes, I must agree that it acts legislatively. It could have entrusted the matter of rates to the commission it created, "subject to such restrictions as may be prescribed in the ordinance creating said board pertaining to the expenditure of surplus utility revenues, establishment of rates for service, ***." Ark. Stat. Ann. § 19-3935 (Repl. 1968).

I suggest, however, that it is contemplated by our statutes that a municipally owned utility be operated for a profit. The term "just compensation" doesn't mean that only the cost of operating and financing the system be uncovered. Just compensation means the market value of a product. It means full compensation. *Arkansas State Highway Comm'n* v. *Stupenti,* 222 Ark. 9, 257 S.W. 2d 37. As regards public utilities, it means a fair return on the value of the property. Black's Law Dictionary (4th Ed.). It is significant that the provision for just compensation must be applied to franchised and municipally owned utilities alike. Statutes providing for use of the surplus income of a municipally owned utility are a clear indication of the intention of the Arkansas General Assembly that municipally owned utilities be operated at a profit and that those profits (surplus revenues) be devoted to numerous purposes. To illustrate, they may be used under various circumstances to pay bonded indebtedness of certain improvement districts. Ark. Stat. Ann. § 19-3901 (Repl. 1968); for off-street parking facilities, sanitation facilities,

hospital facilities, public park buildings, improvements and facilities, auditoriums, convention centers, streets and roadways and airport improvement facilities. Ark. Stat. Ann. § 19-3931 (Repl. 1968). It seems quite possible that the rate making process for a municipally owned utility can be performed in a manner in which the commission controlling and operating it acts administratively. See *Kruzich* v. *West Memphis Utility Commission,* 257 Ark. 187, 515 S.W. 2d 71. If the council acts only in reviewing or approving or disapproving rates fixed by a commission, it might well be that it could be said to act quasi-judicially. If so, its action would be subject to judicial review on certiorari. See Ark. Stat. Ann. § 22-303 (Repl. 1962); *Pine Bluff Water & Light Co.* v. *City of Pine Bluff,* 62 Ark. 196, 35 S.W. 227; *Williams* v. *Dent,* 207 Ark. 440, 181 S.W. 2d 29; *Jones* v. *Leighton,* 200 Ark. 1015, 142 S.W. 2d 505; *Veteran's Taxicab Co.* v. *City of Ft. Smith,* 213 Ark. 687, 212 S.W. 2d 341.

It seems clear to me that the rates fixed, however established, would be subject to judicial review for reasonableness, even though it might be done in a manner not subject to referendum. See *Delony* v. *Rucker,* 227 Ark. 869, 302 S.W. 2d 287; *City of Malvern* v. *Young,* 205 Ark. 886, 171 S.W. 2d 470; 12 McQuillan, Municipal Corporations 483, § 35.37a.

I do not disagree with the majority opinion in any respect. I simply feel compelled to express these additional views.