The Honorable M. Olin Cook State Representative 266 South Enid Avenue Russellville, Arkansas 73801
Dear Representative Cook:
This is in response to your request, on behalf of the Mayor of Russellville, for an opinion on two questions concerning the securing of professional services by municipalities. You have enclosed correspondence from both the Mayor and City Attorney discussing a controversy over the retention of a planning firm to provide services to the City of Russellville. The questions center around the legality of an ordinance adopted by the Russellville City Council (Ordinance 1559), in which the Council retains a planning firm ("Urban Planning Associates"), to provide "day-to-day" and "special projects" planning services. The ordinance states that "because the city has a pre-existing working relationship with Urban Planning Associates, the City should waive the procedure requiring the submission of proposals for professional services." This reference to the "procedure requiring the submission of proposals" is presumably to A.C.A. §§ 19-11-801 to -806 (Supp. 1995), which requires contracts for professional services to be negotiated on the basis of demonstrated competence and qualifications and not on the basis of competitive bids.
The mayor's two questions in this regard are as follows:
 Can the City Council waive provisions of Arkansas Code Annotated 19-11-801 and following with regard to procurement of professional services? Can the emergency clause be used when waiving these requirements?
It is my opinion, in response to these questions, as a general matter, that some provisions of A.C.A. §§ 19-11-801 to -806 are mandatory, and may not be waived. There is, however, no mandatory requirement that professional services be acquired only after the "submission of proposals" as is indicated in the ordinance. The "submission of proposals" is neither required nor contemplated by the relevant subchapter in selecting a particular firm. Although I will opine as a matter of state law that portions of A.C.A. §§ 19-11-801 to -806 are mandatory and may not be waived, I cannot opine as a matter of fact whether they were applicable or in fact complied with as regards a particular contract. I am not empowered as a factfinder in the rendering of legal opinions. Nor does my office construe the provisions of local ordinances.
As an initial matter, it is necessary to note that the relevant subchapter (A.C.A. §§ 19-11-801 to -806) details only four enumerated professional services (legal, architectural, engineering, and land surveying), and states that a municipality may define other consulting services as "professional services" by two-thirds vote of the governing body. I assume, as an initial matter, therefore, that the City of Russellville at some point passed an ordinance defining planning services as a "professional service" for purposes of A.C.A. §§ 19-11-801 to -806. Such action must be taken by ordinance, read publicly at two regularly scheduled meetings, and may not be passed with an emergency clause. See
A.C.A. § 19-11-806(a) (Supp. 1995). Once this has been done, the subchapter provides at section 19-11-804(a) that: "[A] political subdivision . . . may encourage firms engaged in the lawful practice of these professions to submit annual statements of qualifications and performance data to the political subdivision or may request such information as needed for a particular public project." This portion of the statute uses the word "may," and thus appears to be permissive in authorizing the action described. Subsection (b) of the same statute, however, provides that: "The political subdivision shall evaluate current statements of qualifications and performance data of firms on file ormay request such information as needed for a particular public project whenever a project requiring professional services is proposed." (Emphasis added). The subchapter apparently contemplates the selection of a firm on the basis of this "qualifications and performance data." The first part of this subsection is drafted in a mandatory vein, using the word "shall" which in ordinarily legal parlance connotes that which is mandatory. See, e.g., Campbell v. State, 311 Ark. 641, 846 S.W.2d 639
(1993). The municipality therefore must evaluate current statements of "qualifications and performance data" of planning firms on file prior to selecting a firm to provide professional services for a particular project. There is, however, with reference to the selection of a particular firm, no mention of the "submission of proposals," referred to in the ordinance. The submission of proposals is not required. The citymay request "statements of qualifications and performance data" to aid in its selection of a firm for a particular project, but the statutes do not contemplate the selection of a firm based on a "proposal." Once a firm has been selected, A.C.A. § 19-11-805(a) provides that for the basis of negotiations, the political subdivision and the selected firm shall
jointly prepare a detailed, written description of the scope of the proposed services." (Emphasis added). Again, this statute uses the word "shall," and is thus in my opinion mandatory. A joint description of the scope of the services must thus be prepared. Presumably the negotiations as to the required fee for the services is undertaken after or contemporaneously with the preparation of this description of the scope of services.
Thus, in answer to the first question presented, at least two requirements found in A.C.A. §§ 19-11-801 to -806 are mandatory and may not be waived. The municipality must, when "professional services" are needed, evaluate current statements of qualifications and performance data on file, and must, after selecting a firm, jointly prepare with it a description of the scope of the proposed services. The negotiation process with that particular firm may then begin.
Whether compliance was had with these two mandatory requirements is a question of fact.
The second question posed is whether the waiver of the requirements of A.C.A. §§ 19-11-801 to -805 may be accomplished with an emergency clause. My opinion expressed above that the mandatory portions of A.C.A. §§19-11-801 to -806 may not be waived, to some degree makes it unnecessary to address this question. If the provisions may not be waived, they may not be waived immediately by use of an emergency clause. Whether the retention of consultants to provide professional planning services to the City can be accomplished with an emergency clause is a separate question, and one which the Mayor has not strictly posed. Because factual issues, however, may affect whether any mandatory provisions were actually waived, I will set out some general law applicable to the emergency clause issue.
There is no general state statute governing the use of municipal emergency clauses. The law surrounding their use emanates from Amendment7 to the Arkansas Constitution. Such clauses are placed in ordinances to render them effective immediately, rather than delaying their effectiveness until the expiration of the period within which the people retain their right to file a referendum against the ordinance as is authorized under Amendment 7. These clauses are sometimes challenged as not stating facts evidencing a true emergency. Whether a true "emergency" exists is a matter of legislative determination, but it is a judicial matter whether facts constituting an emergency are actually stated in the emergency clause. Burrounghs v. Ingram, 319 Ark. 530, 893 S.W.2d 319
(1995).
Even if the emergency clause to Ordinance 1559 were invalid as not stating facts constituting an emergency, however, there is a separate reason the court might not strike it down. It has been stated that not all actions taken by a municipal city council are subject to referendum. Specifically, those council actions that are "administrative" rather than legislative are not subject to referendum at all. See, e.g., City ofNorth Little Rock v. Gorman, 264 Ark. 150, 568 S.W.2d 481 (1978);Greenlee v. Munn, 262 Ark. 663, 559 S.W.2d 928 (1978); and Lawrence v.Jones, 228 Ark. 1136, 313 S.W.2d 228 (1958). In such cases ("administrative actions") it is not necessary to determine whether an emergency clause is valid, because there is no right of referendum in any event. See Chastain v. City of Little Rock, 208 Ark. 142, 185 S.W.2d 95
(1945). Presumably therefore, an "administrative" ordinance could be made effective immediately, whether or not a real emergency is stated, because in so doing, the city council is not impinging upon the public's right of referendum.
It might reasonably be contended, in my opinion, that the subject matter of Ordinance 1559 is administrative, rather than legislative, and as such, any issue as to the validity of the emergency clause is moot.
To summarize, it is my opinion that as a general matter of law, the mandatory portions of A.C.A. §§ 19-11-801 to -806 may not be waived. It is therefore unnecessary to decide whether this could be accomplished immediately through use of an emergency clause. Factual issues may arise, however, as to whether compliance was required or indeed had with the relevant statutory provisions. In the rendering of official legal opinions, I am not empowered as a factfinder. I cannot, therefore, come to any definitive conclusions about the validity of the ordinance in question or the actions taken thereunder.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh